952 A.2d 473 (2008)
401 N.J. Super. 563
BLOCK 268, LLC, Plaintiff-Respondent,
v.
CITY OF HOBOKEN RENT LEVELING AND STABILIZATION BOARD, City of Hoboken, Carole McLaughlin, Division Chief City of Hoboken, Department of Human Services, Rent Leveling and Stabilization, Defendants, and
Raul G. Perez, Jr. and Elizabeth L. Perez, Defendants-Appellants.
Docket No. A-2228-06T2.
Superior Court of New Jersey, Appellate Division.
Submitted December 12, 2007.
Decided June 12, 2008.
*474 Raul G. Perez, Jr. and Elizabeth L. Perez, appellants pro se.
Riker, Danzig, Scherer, Hyland & Perretti LLP, Morristown, attorneys for respondent (Michael K. Furey, of counsel and on the brief; Stephanie D. Edelson, on the brief).
Before Judges PARKER, R.B. COLEMAN and LYONS.
The opinion of the court was delivered by
R.B. COLEMAN, J.A.D.
Defendants Raul and Elizabeth Perez (collectively "the Perezes") appeal from a November 8, 2006 order granting plaintiff Block 268, LLC (Block 268) summary judgment against defendants City of Hoboken Rent Leveling and Stabilization Board (the Board), the City of Hoboken (the City), Carole McLaughlin (McLaughlin), the division chief of the Board, and the Perezes (collectively "defendants").[1] Only the Perezes have appealed. After reviewing the record in light of the arguments advanced on appeal, we affirm.
The Perezes are tenants in one of two buildings owned by Block 268, located at 1500 Hudson Street, Hoboken, that are commonly known as the Hudson Tea Buildings. BDLJ Associates, LLC (BDLJ) owned both buildings from 1998 to 2004. In 1998, BDLJ renovated and converted the buildings from industrial and commercial use to residential buildings containing 525 units. In March 2000, Barry Light (Light), wrote to the construction official of Hoboken to give notice of his claim, pursuant to N.J.S.A. 2A:42-84.1, for exemption from the rent control ordinance that would have otherwise applied to the two buildings.
In February 2004, the Perezes entered into an eighteen-month lease with BDLJ *475 for an apartment in the 1500 Hudson Street building. The lease contained a provision indicating that the unit was exempt from the rent control pursuant to the Act. Specifically, paragraph 31 of the Perezes' Lease, entitled "EXEMPTION FROM RENT CONTROL," provides as follows:
The Unit is exempt from the provisions of Hoboken's Rent Control Ordinance and will be exempt from any future rent control, rent stabilization or rent leveling ordinance of the City of Hoboken pursuant to N.J.S.A. 2A:42-84.1 et seq. for a period of thirty years from completion of construction of the building.
Furthermore, immediately prior to the Perezes' execution of the Lease, they executed and acknowledged a "Notice to Prospective Tenants," which also advised them that the Property was exempt from the provisions of the Ordinance. Specifically, the "Notice To Prospective Tenants," signed by Raul Perez on February 3, 2004, provides as follows:
BDLJ Associates, LLC is exempt from the provisions of Hoboken's Rent Control Ordinance and will be exempt from any future rent control, rent stabilization or rent leveling ordinance of the City of Hoboken pursuant to N.J.S.A. 2A:42-84.1 et seq. for a period of thirty years from completion of construction of the building. The undersigned is considering executing a Lease for Unit 1L in the project known as "The Hudson Tea Building" . . . and has been furnished a copy of this notice by the Landlord prior to executing the Lease to the Unit.
In May 2004, BDLJ sold the buildings to Toll Brothers, Inc. Approximately two months later, Toll Brothers sold the buildings to Block 268. In September 2005, Block 268 filed a "Master Deed" converting the apartments to condominiums. Block 268 used a "non-eviction plan" to effectuate the conversion, allowing existing renters to remain in occupancy after the conversion was completed.
The Perezes' lease expired in August 2005, and they signed an option to renew form, indicating that they agreed to continue leasing the unit at an increased rate of $3,050 per month. BDLJ subsequently agreed to change that rate and offered the Perezes a monthly rent of $2,970, an amount not calculated in accordance with the rent control ordinance. Despite executing the option to renew, the Perezes believed their unit was subject to rent control and refused to sign the new lease. On January 15, 2006, the Perezes filed a request with McLaughlin, seeking to have their rent calculated in accordance with the Hoboken Rent Control Ordinance (the Ordinance). In response, McLaughlin informed the Perezes that State law precluded her from imposing a rent control regulation on their dwelling. The Perezes appealed McLaughlin's determination to the Board and requested that the Board determine that their unit "falls under the rent control laws" and that the Board make a rent calculation.
At a hearing on May 10, 2006, the Board entertained arguments from Block 268 and the Perezes. The Board voted in favor of the Perezes, finding that their unit was subject to rent control. That determination was memorialized in a resolution dated June 14, 2006.
On June 22, 2006, Block 268 filed a complaint in lieu of prerogative writs against defendants, seeking a declaratory judgment that its buildings are exempt from rent control pursuant to N.J.S.A. 2A:42-84.5. Thereafter, Block 268 moved for summary judgment seeking an order: (1) declaring its buildings are exempt from rent control until 2030; (2) enjoining the municipal defendants from taking any action *476 that would impair its exemption from rent control; and (3) vacating the Board's resolution. Defendants opposed Block 268's motion.
On August, 28, 2006, the motion judge heard oral argument, issued an oral decision, and entered a written order granting Block 268's motion. On November 8, 2006, the judge issued a detailed written opinion, holding that the buildings were exempt from rent control pursuant to the Rent Control Act (the Act), N.J.S.A. 2A:42-84.1 to -84.6, and that the Legislature had preempted the Board from taking any action that would impair the exemption. The Perezes filed a timely notice of appeal.
On appeal, the Perezes present the following issues:

POINT I: BLOCK 268 HAS FAILED TO SHOW THAT THE PEREZES' APARTMENT IS EXEMPT FROM RENT CONTROL.

POINT II: BLOCK 268 IS INELIGIBLE FOR THE RELIEF GRANTED BY THE ACT.

POINT III: THE PEREZES' MARKET RENT.
For substantially the reasons articulated by Judge Curran in her comprehensive written opinion of November 8, 2006, and for the reasons stated below, we affirm.
Rule 4:46-2 provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Appellate courts employ the same standard when reviewing summary judgment orders. Prudential Property & Cas. Ins. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998). Thus, a reviewing court must decide whether there was a genuine issue of material fact. Ibid. If there is no genuine issue of fact, the court will decide whether the trial court's ruling of law was correct. Ibid. In the present case, we are asked to interpret a statute. This is purely a question of law; therefore, our review is de novo. Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549, 803 A.2d 53 (2002).
N.J.S.A. 2A:42-84.2 exempts newly constructed multiple dwellings from rent control or rent leveling ordinances. That statute provides:
In any municipality which has enacted or which hereafter enacts a rent control or rent leveling ordinance, other than under the authority of P.L.1966, c. 168 (C.2A:42-74 et seq.), those provisions of the ordinance which limit the periodic or regular increases in base rentals of dwelling units shall not apply to multiple dwellings constructed after the effective date of this act, for a period of time not to exceed the period of amortization of any initial mortgage loan obtained for the multiple dwelling, or for 30 years following completion of construction, whichever is less.
The term "multiple dwelling" refers to "any building . . . containing four or more dwelling units, other than dwelling units constructed for occupation by senior citizens, rented or offered for rent to four or more tenants or family units." N.J.S.A. 2A:42-84.1. "`Constructed' means constructed, erected or converted but excludes rehabilitation of premises rented previously for residential purposes without an intervening use for other purposes for a period of at least two years prior to conversion." N.J.S.A. 2A:42-84.1b. The effective date of the Act is June 25, 1987. In the present case, Block 268's buildings qualify as "multiple dwellings" and were constructed after the statute's effective date. Therefore, the buildings qualify for exemption from rent control.
The Perezes argue that Block 268 is not entitled to a rent control exemption because *477 it failed to comply with the Act's filing requirements, which are as follows:
The owner of any multiple dwelling claiming an exemption from a rent control or rent leveling ordinance pursuant to this act shall file with the municipal construction official, at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling, a written statement of the owner's claim of exemption from an ordinance under this act, including therein a statement of the date upon which the exemption period so claimed shall commence, such information as may be necessary to effectively locate and identify the multiple dwelling for which the exemption is claimed, and a statement of the number of rental dwelling units in the multiple dwelling for which the exemption is claimed.
[N.J.S.A. 2A:42-84.4.]
The Perezes assert that Light's letter to the Hoboken municipal construction official did not satisfy the aforementioned requirement because it was filed individually by Light, and not on behalf of BDLJ. This argument was not raised below; therefore, we need not consider the merits of this claim. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). Nevertheless, we comment briefly on this issue.
First, Light's letter claiming the exemption was addressed to "BDLJ Associates, LLC," and to the municipal construction official. Although the record does not disclose precisely what connection Light has to BDLJ, the referenced statutory provision concerns an exemption from rent control that is only available to "the owner of any multiple dwelling claiming exemption from a rent control or rent leveling ordinance" and it is reasonably clear that Light is the owner or is claiming the exemption on the owner's behalf. If there is only one unavoidable resolution of an alleged disputed issue of fact, then a genuine issue of material fact does not exist. Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso, P.A., 189 N.J. 436, 446, 916 A.2d 440 (2007); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
It is undisputed that BDLJ was the owner, that it converted the premise from industrial and commercial uses to residential, and that it was sent a copy of Light's notice claiming the exemption. There is no evidence that BDLJ or any person on its behalf ever challenged or objected to Light's authority to file with the municipal construction official the written statement of the owner's claim of exemption. We agree with plaintiffs that Light should have disclosed the nature of his interest in the property or in BDLJ, however, his failure to have done so appears to have been a hypertechnical omission or oversight that does not nullify the effect of his act. Any technical non-conformity is excusable under the equitable doctrine of substantial compliance.[2]Bernstein v. Bd. of Trs. of Teachers' Pension & Annuity Fund, 151 N.J.Super. 71, 76-77, 376 A.2d 563 (App.Div.1977).
In their appeal to the Board and at times in their papers on this appeal, the Perezes appear to acknowledge or presume that BDLJ obtained the exemption in 2000, but they contend it lost that exemption or it lapsed either because the filing was defective, because the exemption was not transferable or because the conversion to condominiums constituted a forfeiture. The argument that the filing was defective, that is, that BDLJ failed to gain *478 the exemption because it did not include information pertaining to the building's mortgage financing, is flawed. The Act does not require an owner to include this information when claiming an exemption. See N.J.S.A. 2A:42-84.4. On the other hand, it is clear that the duration of the exemption may be affected by the term of the mortgage. The duration of the exemption is the lesser of two periods: (1) the period of amortization, or (2) thirty years from completion of construction. N.J.S.A. 2A:42-84.2a and b. That does not mean that the buildings are not exempt from rent control if information is not provided concerning the period of amortization. It means if the period of amortization is less than thirty years, the exemption is limited to that lesser period.
Next, the Perezes argue that if Block 268 or its predecessors succeeded in perfecting the rent control exemption, it was lost when title was transferred or the exemption lapsed in 2005 when Block 268 converted the units from apartments to condominiums. We agree with the trial court's rejection of that proposition. The exemption runs with the real estate. As stated above, N.J.S.A. 2A:42-84.2 provides that municipal rent control ordinances "shall not apply to multiple dwellings constructed after [June 25, 1987]." Clearly expressing the intent of the Legislature, N.J.S.A. 2A:42-84.5, states:
It is the intent of P.L.1987, c. 153 (C.2A:42-84.1 et seq.), that the exemption from rent control or rent leveling ordinances afforded under P.L.1987, c. 153 (C.2A:42-84.1 et seq.) shall apply to any form of rent control, rent leveling or rent stabilization, whether adopted now or in the future, and by whatever name or title adopted, which would limit in any manner the periodic or regular increases in base rentals of dwelling units of multiple dwellings constructed after the effective date of P.L.1987, c. 153 (C.2A:42-84.1 et seq.). No municipality, county or other political subdivision of the State, or agency or instrumentality thereof, shall adopt any ordinance, resolution, or rule or regulation, or take any other action, to limit, diminish, alter or impair any exemption. . . .
Likewise, N.J.S.A. 2A:42-84.6 provides that "[t]he Legislature . . . declares it to be public policy of this State that, within the limitations imposed by this act, the exemptions granted under this act shall not be limited, diminished, altered, or impaired during the period of exemption afforded."
Therefore, the trial court properly concluded that the language of the Act is clear and unambiguous. The statute is to be interpreted consistent with its plain meaning. Lozano v. Frank DeLuca Constr., 178 N.J. 513, 522, 842 A.2d 156 (2004).
Notably, there is no provision in the Act indicating that a multiple dwelling is no longer exempt from a rent control ordinance upon a transfer of title or a conversion from a rental premises to a condominium. By contrast, the language of the Act makes it clear that the Board may not limit or impair the exemption of multiple dwellings constructed after the effective date of the Act. Thus, the Act preempted municipalities from enacting or enforcing rent control ordinances such as the ordinance the Board found applicable to the Perezes' unit. Because State law preempted this field, the City and the Board cannot exercise a power that contradicts the policy established by the Legislature. State v. Crawley, 90 N.J. 241, 248, 447 A.2d 565 (1982); Auto-Rite Supply Co. v. Mayor & Committeemen of Woodbridge, 25 N.J. 188, 194, 135 A.2d 515 (1957).
Despite the clear language of the Act, the Perezes suggest that the conversion of apartments within the Hoboken Tea Building to condominiums diminished the rental *479 housing supply and thereby frustrated the legislative purpose of the Act. They rely on N.J.S.A. 2A:42-84.5b and -84.6 to support their position. N.J.S.A. 2A:42-84.5b provides that "[t]he Legislature deems it necessary for the public welfare to increase the supply of newly constructed rental housing to meet the need for such housing in New Jersey." N.J.S.A. 2A:42-84.6 states that "the intent of this Act is to establish an experimental program whereby the construction of multiple dwellings in this State shall be encouraged and the marketability of those multiple dwellings shall be maintained[.]"
Although Block 268 converted a number of units to condominiums, it continues to rent or offer for rent over 100 units, not including units that are being rented by other owners of condominiums in their buildings. Thus, the building retains its status as a "multiple dwelling," and it remains exempt from the rent control ordinance. Moreover, the renovation did increase the supply of newly constructed rental housing. By continuing to rent and offer for rent several of its units, the conversion to condominiums has not frustrated the Legislative intent outlined in N.J.S.A. 2A:42-84.5b and -84.6. Nor did the conversion decrease the marketability of the units. To the contrary, maintaining the exemption of the building upon transfer of title to subsequent owners makes it more marketable. A prospective buyer is more likely to purchase a building knowing that its units will not be subject to rent control. Indeed, the exemption enhances a building's marketability. As the trial court observed, the Legislature chose to effectuate its policies through the grant of an exemption from rent control. If collateral consequences resulting from that choice are unacceptable, it is for the Legislature to rectify by statutory amendment.
Because we find that Block 268 remains exempt from the Ordinance, there is no need to consider the Perezes' third point on appeal regarding the calculation of the base rent. In sum, although the record does not reveal Barry Light's relationship to BDLJ at the time he claimed the exemption, that does not raise a genuine dispute as to a material fact. We also note that the record before us does not reveal the terms of the mortgage, if any, and that the August 28, 2006 order states the exemption is thirty years. The statute provides, however, that the exemption is thirty years or the initial period of amortization if that period is less than thirty years.
In the event it is established that the initial period of amortization is less than thirty years, the order may be amended accordingly. With that qualification, the order granting summary judgment is affirmed, and we do not retain jurisdiction.
NOTES
[1] On August 28, 2006, Judge Barbara A. Curran entertained oral argument on the motion. On that date, the judge issued an oral decision and entered a written order granting Block 268's motion, and expressly stating the court's intention to supplement the order with a written opinion. Thereafter, Judge Curran entered the November 8, 2006 Order and Opinion from which the Perezes appeal.
[2] In its brief, Block 268 contends that "BDLJ precisely complied with the requirements of N.J.S.A. 2A:42-54.4 in two claim letters it filed for the two Hudson Tea Buildings[.]" It asserts "the letters were sent on behalf of BDLJ, the owner[.]"