983 A.2d 203 (2009)
410 N.J. Super. 491
Arthur B. CARLSON, Jr., Plaintiff-Respondent,
v.
CITY OF HACKENSACK, a body corporate and politic of the State of New Jersey, Defendant-Appellant.
No. A-2898-08T3
Superior Court of New Jersey, Appellate Division.
Argued October 27, 2009.
Decided December 1, 2009.
Eric M. Bernstein, Warren, argued the cause for appellant (Eric M. Bernstein & Associates, LLC, attorneys; Mr. Bernstein, of counsel and on the brief; Wendy L. Wiebalk, on the brief).
*204 David H. Ben-Asher, Montclair, argued the cause for respondent (Rabner Allcorn Baumgart & Ben-Asher, P.C., attorneys; Mr. Asher and Eugenie F. Temmler, on the brief).
Julian F. Gorelli, Senior Deputy Attorney General, argued the cause for amicus curiae State of New Jersey (Anne Milgram, Attorney General, attorney; Melissa Raksa, Assistant Attorney General, of counsel; Mr. Gorelli, on the brief).
Fred Semrau, Boonton, argued the cause for amicus curiae Association of Municipal Assessors of New Jersey (Dorsey & Semrau, attorneys; Mr. Semrau, on the brief).
Before Judges FUENTES, GILROY and SIMONELLI.
The opinion of the court was delivered by
GILROY, J.A.D.
Defendant, City of Hackensack (City), appeals from that part of the April 25, 2008 order granting partial summary judgment to its tax assessor, plaintiff Arthur Carlson, determining the City had wrongfully reduced plaintiff's salary. The City also appeals from a second order of the same date denying its cross-motion for partial summary judgment.
The issue presented on appeal is whether a municipality is permitted to reduce the salary of its tax assessor during his or her term of office if the municipality also reduces the assessor's weekly work hours commensurate with the salary reduction. We answer the question in the negative and affirm.
The City first employed plaintiff as a full-time tax assessor in 1992. The City reappointed plaintiff in 1997 giving him tenure in that office, pursuant to N.J.S.A. 54:1-35.31(1). He continues to hold that position. Effective January 1, 2008, the City reduced plaintiff's employment from full time (35 hours per week) to part time (15 hours per week); reduced his salary from approximately $107,000 ($111,613 with longevity) to $44,288 ($47,837 with longevity) per annum; and eliminated his health benefits because he was no longer a full-time employee.
On January 11, 2008, plaintiff filed a complaint in lieu of prerogative writs, seeking an order declaring that the City's action: in reducing his salary and eliminating his health benefits was unlawful, contrary to N.J.S.A. 40A:9-146 (count one); in reducing his salary was unlawful, contrary to N.J.S.A. 40A:9-165 (count two); and in reducing his salary and eliminating his health benefits was unlawful, contrary to N.J.S.A. 40A:9-146.4, (count three). On February 25, 2008, plaintiff filed a motion seeking partial summary judgment on count two. The City filed a cross-motion for partial summary judgment on the same count.
On April 25, 2008, the trial court entered an order, supported by an oral decision that: granted plaintiff's motion determining that the City's action in reducing plaintiff's salary violated N.J.S.A. 40A:9-165; awarded plaintiff back pay from January 1, 2008; and enjoined the City from reducing plaintiff's 2007 salary of $111,613 during his term as tax assessor. In so doing, Judge Harris reasoned that the unambiguous proscription contained in N.J.S.A. 40A:9-165 prohibits a municipality from reducing its tax assessor's salary during the term of his or her office. On the same day, the court entered an order denying defendant's cross-motion.
On December 26, 2008, plaintiff voluntarily dismissed count three of his complaint. On January 23, 2009, the court granted plaintiff's unopposed motion for partial summary judgment on count one. *205 The City appeals from the two April 25, 2008 orders.
The City argues that it did not violate N.J.S.A. 40A:9-165 when it changed plaintiff's employment from full time to part time, reducing his salary commensurate with the reduction in his weekly work hours. Plaintiff counters that the City is prohibited from reducing his salary during his term as tax assessor by the plain language of N.J.S.A. 40A:9-165. Amici curiae State of New Jersey and the Association of Municipal Assessors of New Jersey support plaintiff's position.
A trial court will grant summary judgment to the moving party "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523, 666 A.2d 146 (1995). "An issue of fact is genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c).
On appeal, "the propriety of the trial court's order is a legal, not a factual, question." Pressler, Current N.J. Court Rules, comment 3.2.1 on R. 2:10-2 (2010). We employ the same standard that governs trial courts in reviewing summary judgment orders. Block 268, LLC v. City of Hoboken Rent Leveling & Stabilization Bd., 401 N.J.Super. 563, 567, 952 A.2d 473 (App.Div.2008).
Because the question presented turns on statutory construction, we review the general principles governing that task. In construing a statute, the role of a court is to determine the intent of the Legislature and, "generally, the best indicator of that intent is the statutory language." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). In deciphering the Legislature's intent, "[w]e apply to the statutory terms the generally accepted meaning of the words used by the Legislature." Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418-20, 982 A.2d 445, 448 (2009). It is not the function of a court to "presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002).
"A clear and unambiguous statute is not open to construction or interpretation." Watt v. Mayor & Council of Franklin, 21 N.J. 274, 277, 121 A.2d 499 (1956). Indeed, the court must "`construe and apply the statute as enacted.'" DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039 (quoting In re Closing of Jamesburg High Sch., 83 N.J. 540, 548, 416 A.2d 896 (1980)). "If the plain language leads to a clear and unambiguous result, then our interpretive process is over." Richardson v. Bd. of Trs., Police & Fireman's Ret. Sys., 192 N.J. 189, 195, 927 A.2d 543 (2007). Only if the statutory language is ambiguous and open to more than one interpretation should the court look to extrinsic evidence. DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039.
Here, the controlling statute is N.J.S.A. 40A:9-165. That statute provides in pertinent part:
The governing body or a municipality, by ordinance, unless otherwise provided by law, shall fix and determine the salaries, wages or compensation to be paid to the officers and employees of the municipality, including the members of the governing body and the mayor or other chief executive, who by law are *206 entitled to salaries, wages, or compensation.
Salaries, wages, or compensation fixed and determined by ordinance may, from time to time, be increased, decreased or altered by ordinance. No such ordinance shall reduce the salary of, or deny without good cause an increase in salary given to all other municipal officers and employees to, any tax assessor, chief financial officer, tax collector or municipal clerk during the term for which he shall have been appointed.

[(Emphasis added).]
We conclude that the language contained in the above statute is clear and unambiguous. Generally, that statute authorizes a municipality to increase, decrease or otherwise alter a municipal employee's salary. Additionally, the statute prohibits a municipality from denying a salary increase to its tax assessor when granting salary increases to other municipal employees, except for "good cause." Lastly, the statute explicitly prohibits a municipality from decreasing the salaries of four categories of employees, one of which is the tax assessor. Accordingly, we conclude that the trial court properly granted partial summary judgment to plaintiff on count two and denied the City's cross-motion for partial summary judgment.
The City argues that N.J.S.A. 40A:9-165 cannot be read in isolation, but must be read in pari materia with N.J.S.A. 40A:9-146. That statute reads as follows:
The governing body of chief executive, as shall be appropriate to the form of government of the municipality shall provide for the appointment of a tax assessor and such deputy tax assessors as it may determine necessary. The appointing authority may, by resolution or order as appropriate, set the total number of weekly hours of operation of the tax assessor's office and the total number of weekly work hours of the tax assessor, commensurate with the compensation paid to the tax assessor. The appointing authority shall not set the specific work hours of the tax assessor. The governing body, by ordinance, shall determine the amount of compensation of such assessors.
[(Emphasis added to indicate the September 21, 2000 amendment to the statute. L. 2000, c. 126 § 23).]
The City contends that when N.J.S.A. 40A:9-146 is read in pari materia with N.J.S.A. 40A:9-165, it expresses the Legislature's intent to modify N.J.S.A. 40A:9-165 by authorizing a municipality to not only reduce a tax assessor's weekly work hours, but also to decrease his or her salary commensurate with the reduction in work hours. We disagree.
We recognize that courts may consider other rules of statutory construction when seeking to ascertain legislative intent, such as reading statutes in pari materia. "`Statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object.'" Marino v. Marino, 200 N.J. 315, 330, 981 A.2d 855 (2009) (quoting 2B Sutherland on Statutory Construction § 51:3 (7th ed. 2008) (footnotes omitted)). However, courts only "[r]esort to this maxim, like other tools used by courts to assist them in divining legislative intent, ... when the Legislature's intent is unclear." Ibid. Stated differently, "`[s]tatutes in pari materia are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent.'" Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 115, 693 A.2d 92 (1997)). Because we find the language of N.J.S.A. 40A:9-165 clear and *207 unambiguous, we need not resort to reading the statutes in pari materia. See Richardson, supra, 192 N.J. at 195, 927 A.2d 543 ("[i]f the plain language leads to a clear and unambiguous result, then our interpretive process is over").
What is more, we conclude that the language of N.J.S.A. 40A:9-146 is also clear and unambiguous. The September 2000 amendment does not authorize municipalities to reduce tax assessors' salaries, contrary to N.J.S.A. 40A:9-165, but rather clarifies and limits the role of municipalities in setting tax assessors' weekly work hours. N.J.S.A. 40A:9-146 permits a municipality to set the amount of weekly work hours of the tax assessor "commensurate with the compensation paid to the tax assessor." It does not authorize the municipality to reduce the tax assessor's salary commensurate with a reduction in the hours worked. Additionally, the amendment limits the control of a municipality over the tax assessor's work hours by prohibiting the municipality from "set[ting] the specific work hours of the tax assessor." N.J.S.A. 40A:9-146. We do not discern any language in the 2000 amendment that modifies the statutory bar in N.J.S.A. 40A:9-165, prohibiting municipalities from reducing tax assessors' salaries during their term of office.
Lastly, the City contends that it possesses the inherent authority to reduce its tax assessor's salary for good cause; the City asserts that it reduced plaintiff's weekly work hours and salary because of budgetary constraints. Although we agree that a municipality possesses authority to reduce work hours and salaries of most employees, unless prohibited by statute or contract, we are satisfied that a municipality lacks the authority to reduce the salary of its tax assessor, for good cause or not.
Unlike most municipal employees, "a municipal tax assessor is a hybrid because he or she is subject to the control of both the municipality and the State." Casamasino v. City of Jersey City, 158 N.J. 333, 344, 730 A.2d 287 (1999). "Although a tax assessor is generally appointed by a municipality, N.J.S.A. 40A:9-146, and his or her jurisdiction is local, the powers and duties of that office are specifically prescribed by the Legislature." Ibid. The basic obligation of a tax assessor "is to `determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his [or her] judgment, it would sell for at a fair and bona fide sale by private contract.'" Ibid. (quoting N.J.S.A. 54:4-23).
In fulfilling that duty, a tax assessor is charged by this State's constitution to assure that, unless otherwise exempted, all real property is "assessed according to the same standard of value." N.J. Const. art. VIII, § 1, ¶ 1(1)(a). By statute, the assessor is further charged to fulfill that duty by valuing all real property in the municipality "without favor or partiality." N.J.S.A. 54:4-36. "In determining property values, assessors, like judges, should perform their duties without fear or favor. Their quasi-judicial duties should be exercised free of pressure and harassment." Arace v. Irvington, 75 N.J.Super. 258, 269, 183 A.2d 104 (Law Div.1962). Accordingly, the Legislature established a statutory framework to keep assessors free from local interference. Ream v. Kuhlman, 112 N.J.Super. 175, 189-91, 270 A.2d 712 (App. Div.1970), certif. denied, 59 N.J. 267, 281 A.2d 529 (1971).
That framework consists of various statutory provisions. The Legislature provided local tax assessors with tenure upon reemployment after serving an initial four-year term. N.J.S.A. 54:1-35.31. Tenure prohibits a municipality from removing a *208 tax assessor from office for "political reasons"; indeed, a tenured tax assessor can only be removed "for good cause shown and after a public hearing before the [D]irector [of Taxation] or his [or her] designee after due notice." Ibid.
Another component of the framework is N.J.S.A. 40A:9-146.4. That statute authorizes an individual to hold the position of tax assessor in more than one municipality on condition "that the holding of additional appointments does not interfere with the proper discharge of statutory duties, nor conflict with obligations to the respective municipalities in which the assessor serves." N.J.S.A. 40A:9-146.4. That statute also prohibits a municipality from reducing or denying an increase in a tax assessor's salary "because of the multiple service." Ibid.
A third component of the framework is N.J.S.A. 40A:9-165 discussed supra. Among other things, that statute expressly prohibits a municipality from reducing a tax assessor's salary during the term of his or her office. With that statutory framework in place, "assessors can carry out their responsibilities free from political pressure and secure in the knowledge that, if they perform their responsibilities as assessors honestly and completely, they need not fear reprisals nor retaliation from municipal officials." Ass'n of Mun. Assessors of N.J. v. Mullica Twp., 225 N.J.Super. 475, 481-82, 542 A.2d 970 (Law Div. 1988).
Because of the unique statutory framework established by the Legislature to protect the independence of local tax assessors, we conclude that a municipality is prohibited from reducing its tax assessor's salary during the term of his or her office. N.J.S.A. 40A:9-165. The authority to reduce a tax assessor's salary because of budgetary constraints must come in the first instance from the Legislature.
Affirmed.