RARITAN ENGINE COMPANY NO. 2, A NON-PROFIT CORPORA-
TION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPEL-
LANT, v. THE MAYOR AND COUNCIL OF THE TOWNSHIP OF
EDISON AND THE TOWNSHIP OF EDISON, DEFENDANTS-
RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 30, 1982—Decided April 15, 1982.

160

Before Judges MATTHEWS, PRESSLER and PETRELLA.

*Harvey Blaustein* argued the cause for appellant (*Bressler, Blaustein and Wasserman*, attorneys; *Harvey Blaustein* of counsel, *Robert S. Susser* on the brief).

*Peter A. DeSarno* argued the cause for respondents and on the brief.

The opinion of the court was delivered by

PETRELLA, J. A. D.

Plaintiff Raritan Engine Company No. 2, a volunteer fire company ("Company"), appeals from a judgment entered by the trial judge determining that title to certain real property located in the Township of Edison (formerly known as Raritan Township) vested in the township by operation of *N.J.S.A.* 40:151–42.[1] The Company also contends that the trial judge erred in finding

---

[1] *N.J.S.A.* 40:151–1 to 40:151–40 and *N.J.S.A.* 40:151–42 to 40:151–47 were repealed by *L.*1971, c. 197 (*N.J.S.A.* 40A:14–176), effective July 1, 1971. The substance of *N.J.S.A.* 40:151–42 which this appeal relies on is currently found at *N.J.S.A.* 40A:14–91.

that it did not obtain title by adverse possession, *N.J.S.A.* 2A:14–6, and in disposing of the matter on "cross-motions for summary judgment." We affirm.

The essential facts are undisputed. Prior to 1924 and pursuant to *N.J.S.A.* 40:151–1, the township committee of what was then Raritan Township created within the township various fire districts which had all the rights and powers to provide for such fire protection as were conferred upon the township itself by statute. The legal voters of the fire districts were authorized to elect five residents to serve as the Board of Fire Commissioners. Each fire district was designated by number and the commissioners thereof were considered a corporate body invested with the "power to hold, purchase, lease and convey, in their name, such real and personal estate as the purpose of the corporation shall require . . . ." *N.J.S.A.* 40:151–2. One such corporate body was known as "The Commissioners of Fire District No. 3 in the Township of Raritan and County of Middlesex" ("Commissioners"). On July 1, 1924 and November 1, 1929 William Gross and his wife conveyed to the Commissioners property designated as Lots number 4 and 5 on Gross Terrace. On October 31, 1949 Raritan Township conveyed to the Commissioners Lots 2 and 3 on Gross Terrace. A fire house was subsequently built on this four-lot tract, which constitutes the property in question.

Prior to December 20, 1957 the voters of Raritan Township adopted the provisions of Optional Municipal Charter Plan E under the Faulkner Act, *N.J.S.A.* 40:69A–1 *et seq.*, which, among other things, vested administrative power in the mayor and legislative power in the township council. On that same date the mayor and council abolished the Commissioners, effective at noon on January 1, 1958. Not only were the Commissioners eliminated along with the fire district, but the new Township of Edison came into being. Simultaneously there was created a Department of Public Safety consisting of the Division of Fire and the Division of Police. The Division of Fire, under the administration of a Director of Public Safety, consisted of five volunteer companies and a paid force. Numbered among the

volunteer fire companies was plaintiff Company, a nonprofit corporation, incorporated some 50 years ago. Since January 1, 1958 the Company has shared occupancy of the fire house located on the property now in dispute with the paid fire fighters. The Company argues that it is the successor in interest or assignee of the now defunct Commissioners and that once the Commissioners were eliminated, all real property held in their names passed automatically to plaintiff volunteer fire company. Plaintiff relies on the fact that at the time they were disbanded, all the duly elected Commissioners were members of the Company. It further claims title to the property by operation of *N.J.S.A.* 40:151–42 which provides:

> The township committee of any township wherein a fire district shall have been organized may, by resolution authorized in the manner provided in section 40:151–43 of this title, dissolve and abolish said fire district. Upon the adoption of such resolution the fire district shall be dissolved and abolished, and any moneys remaining in the hands of the treasurer of such fire district shall be turned over to the treasurer of such township.

Although the statute provides for automatic transfer of money from the Commissioners to the township upon dissolution of the fire district, it is silent as to disbursement or devolution of real property which might have been held by the Commissioners prior to their being eliminated. Plaintiff now contends that the Legislature specifically intended to exempt real estate from the automatic transfer of funds and points out that when a fire district is abolished upon the creation of two or more municipalities, *N.J.S.A.* 40:151–47 expressly provides for the allotment and division among those municipalities of "all property, real and personal, money on hand, due or to become due . . . ." Thus, it is argued that by failing to explicitly order the transfer of real estate in *N.J.S.A.* 40:151–42, the Legislature intended its omission.

The trial judge rejected plaintiff's contention and found that the Legislature's failure to provide for the automatic transfer of real property and assets other than money to the township was

"inadvertent." He considered title in the municipality as the only appropriate result as well as the "obvious result."

Our review of the role of the Commissioners as administrators of the fire districts in the interest of the public welfare leads us to the same conclusion. Each year, in addition to electing the members of the Board to fill the offices of those Commissioners whose terms expired, the legal voters of the district also determined the amount of money to be raised for the coming year. See *N.J.S.A.* 40:151–6. The Commissioners would then certify the amount of money appropriated by the voters to the assessor of the township, who would then assess that money on district residents, their estates and taxable property and collect the taxes due. The money so collected was paid to the treasurer of the district and expended to provide and maintain the means for extinguishing fires. *N.J.S.A.* 40:151–25. Similarly, the voters could elect to raise money for a fire house and necessary apparatus. *N.J.S.A.* 40:151–28. They could also approve the issuance of bonds to purchase fire engines and land and to erect buildings for the housing of fire apparatus. See *N.J.S.A.* 40:151–31; 40:151–32 and 40:151–33.

Although the Commissioners were a corporate entity, they were charged with the administration of funds made available through the township's collection of taxes which were levied upon the residents of the district. Plaintiff now seeks to have title to that property placed in itself, a private, although nonprofit, corporation—a volunteer fire company.

Even though at dissolution of the fire district the duly elected Commissioners were members of Raritan Engine Company No. 2, their responsibilities as Commissioners were owed to the fire district. Despite the statute's silence as to the automatic devolution of real property, it would be totally unreasonable to hold that any person or corporation other than the municipality which succeeds to the fire-fighting responsibility should obtain title to such property. Generally, there is a presumption

against legislative intent to effect a change of substance by revision of laws, and that presumption is not necessarily overcome by mere change of phraseology or addition or omission of words. *See In re Glen Rock*, 25 *N.J.* 241, 249 (1957), and *Caldwell v. Rochelle Park Tp.*, 135 *N.J.Super.* 66, 74 (Law Div. 1975). Hence, we cannot conclude that the omission here of a reference to real property expressed any legislative intent. Furthermore, the result sought by plaintiff would be contrary to public policy in that public property would be given to a private organization. Nor does plaintiff's nonprofit status warrant a different result.[2]

The thrust of the statutory scheme establishes that the Commissioners were, in effect, custodians of public funds and public property, to be expended and used by them in their discretion for the sole purpose of providing fire protection. As such custodians their function was similar to a fiduciary. We thus might apply principles akin to the *cy pres* doctrine for charitable trusts to resolve the title issue. *See Howard Savings Inst. v. Peep*, 34 *N.J.* 494 (1961), and *In re Crichfield Trust*, 177 *N.J.Super.* 258 (Ch.Div.1980). Title to the real estate would thus devolve upon the municipality which has assumed responsibility for fire protection within its borders. See *N.J.S.A.* 40A:14–7 and 40A:14–70. We conclude that all property, both real and personal, owned by a board of fire commissioners of a municipality at the time of its dissolution vests in the township, which is

---

[2]Indeed, such a donation or gift of public property to a society, association or corporation may well run afoul of our State Constitution. *N.J.Const.* (1947), Art. VIII, § III, par. 3 provides:

No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever.

Although this may not have been a gift in the usual sense, the Constitution prohibits gifts of public funds or property to a private corporation whether made directly or indirectly. *Wilentz v. Hendrickson*, 133 *N.J.Eq.* 447, 464–465 (Ch.1943), aff'd 135 *N.J.Eq.* 244 (E. & A.1944).

the only true successor in interest. There is nothing to establish that plaintiff is the "successor" or "assignee" of the board of fire commissioners.

In view of our holding, plaintiff would not be entitled to the property even if the Commissioners had attempted to convey the property to the fire company before they were abolished. Therefore, plaintiff's claim that it is the "successor in interest" to the board of fire commissioners is in fact and in law without merit. We further note that *N.J.S.A.* 40:151–3 required only that the Commissioners be residents of the fire district and did not mandate that they be connected in any way with the fire fighting profession. Plaintiff's argument that all the duly elected Commissioners at the time of dissolution were members of the Company is of no consequence and does not put plaintiff in any special position.

Plaintiff also argues that it obtained title by adverse possession and that that matter was improperly resolved on what it refers to in its brief as "cross-motions for summary judgment." We have examined the record in light of the arguments set forth in the briefs and find them to be without merit. *R.* 2:11–3(e)(1)(A) and (E). Plaintiff admitted that since January 1, 1958 its volunteer members have shared possession of the fire house with the paid fire fighters employed by the township. Possession, therefore, was neither exclusive nor hostile and in no way can be interpreted as notification to the township that plaintiff was asserting title or exclusive right of possession to the property. *N.J.S.A.* 2A:14–6. See, *Mannillo v. Gorski*, 54 *N.J.* 378 (1969). The record also discloses that on the day the trial was scheduled plaintiff had the opportunity to present witnesses and submit its proofs, but instead suggested that the matter be resolved by the court as if it were a motion for summary judgment when it appeared that the case was ready to be tried. Having chosen this strategy, plaintiff is

bound thereby. *State v. Harper,* 128 *N.J.Super.* 270, 277 (App. Div.1974), certif. den. 65 *N.J.* 574 (1974).

The judgment of the Chancery Division is affirmed.