NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0751-13T4

NEWFIELD FIRE COMPANY NO. 1,

    Plaintiff-Appellant,

v.

THE BOROUGH OF NEWFIELD,

    Defendant-Respondent.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **January 23, 2015** |
| **APPELLATE DIVISION** |

Submitted September 29, 2014 - Decided January 23, 2015

Before Judges Lihotz, St. John and Rothstadt.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-1077-13.

Buonadonna & Benson, P.C., attorneys for appellant (Alan G. Giebner, on the briefs).

Weir & Partners, LLP, attorneys for respondent (Daniel E. Rybeck and John C. Eastlack, Jr., on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

We consider the scope of N.J.S.A. 40A:14-68, which allows a municipality to exercise "supervision and control" over a volunteer fire company, designated as its official firefighting organization.  Plaintiff Newfield Fire Company No. 1 (Fire Company), a nonprofit, volunteer fire organization that has

provided firefighting services to defendant the Borough of Newfield (Borough) for decades, appeals from an August 29, 2013 judgment substantially upholding Ordinance #2013-7, adopted by the Borough to regulate the Fire Company. Subject to three exceptions declared unenforceable, Judge Georgia M. Curio concluded the ordinance was a valid and enforceable exercise of municipal authority, permitted by N.J.S.A. 40A:14-68. The Fire Company argues the judge erroneously applied the statute and maintains the ordinance represents an invalid imposition of control over the affairs and internal governance of the Fire Company. Following our consideration of the arguments presented in light of the record and applicable law, we reject these assertions and affirm.

In 1908, a volunteer firefighting organization, the predecessor to the Fire Company, commenced and has continuously provided firefighting services to the residents of the Borough. The Fire Company is an independent New Jersey nonprofit corporation, as verified by a certificate of incorporation and governing bylaws filed on March 12, 2012.[1] Article VI of the Fire Company's bylaws outlines the duties of officers, including

---

[1] The then Chief of the Fire Company averred the Fire Company was originally incorporated in 1908, and holds the original certificate of incorporation, which was not included in the record. The Borough provided a print out from the Treasury's webpage reflecting the recited record of incorporation.

the Chief; Article VII outlines qualifications and duties of membership; Article VIII authorizes the Fire Company to remove members; and Article XIII provides for the annual election of various officers, including the Chief, and the procedure to fill vacancies.

Historically, the relationship between the Fire Company and the Borough was harmonious, and the Fire Company and its predecessor have provided firefighting services "[a]s a matter of long[-]standing custom and practice," even before the Borough was chartered in 1924. Relations between the Fire Company and the Borough grew contentious in 2009 when the Fire Company's membership elected a new Fire Chief.

There is no written agreement between the Fire Company and the Borough. For years, the Fire Company has been housed in the Borough's municipal building, along with other municipal services. The enmeshed relationship of the Borough and the Fire Company is aptly illustrated by the fact that a sign in front of the Borough-owned municipal building was donated to and is owned by the Fire Company, but electricity to operate the sign is provided by the Borough. The Borough pays the Fire Company's liability and worker's compensation insurance, building maintenance and utilities, and purchased certain Fire Company equipment such as its fire vehicles. The Fire Company itself

generates resources independent from Borough funds through fundraising and contributions, to pay other on-going expenses.

In December 2010, the Borough adopted Ordinance #2010-11, entitled "Fire Department." This ordinance recognized the Fire Company as the sole firefighting organization in the Borough and provided the Borough "shall require the execution of all necessary agreements with the [Fire Company] to provide fire-fighting services," pursuant to N.J.S.A. 40A:14-68; "[m]embership in the [Fire Company] shall be in accordance with this chapter and the bylaws of the [Fire Company]"; and appointment or election of the Fire Chief shall take place pursuant to the Fire Company bylaws. In accordance with Ordinance #2010-11, the Borough presented the Fire Company with a contract for firefighting services, which the Fire Company rejected.[2]

The following December, the Borough enacted Ordinance #2011-15, amending Ordinance #2010-11, authorizing the Borough to exercise broader control over the Fire Company's general operations. Specifically, Ordinance #2011-15 required the Borough to approve the Fire Company bylaws, any bylaw amendments, its elected officers, and its line officers. The amended ordinance also detailed the Fire Chief's duties and set

---

[2] This contract is not included in the record.

qualifications for and provided for appointment of individuals seeking membership in the Fire Company. Finally, the ordinance provided "[f]or cause, [Borough] Council may reprimand, suspend, or remove from office the Fire Chief, or any officer or officers of the [Fire Company]."

Ordinance #2011-15 was amended in July 2013, with the enactment of Ordinance #2013-7. Ordinance #2013-7 is the subject of this appeal. The significant addition in Ordinance #2013-7 requires all Fire Company line officers, which include the Chief, Deputy Chief, Assistant Chief, Captain, Lieutenants, and Fire Police Captain, "shall be appointed by the Borough['s] Governing Body[,] as provided by law."[3]

The Fire Company filed this complaint in lieu of prerogative writs, seeking to invalidate Ordinance #2013-7 as ultra vires. The Fire Company asserted the Borough abused its discretionary authority in adopting Ordinance #2013-7, and the adoption was "arbitrary, capricious and unreasonable," making the ordinance "wrongful" and "unenforceable." The trial court temporarily restrained the Borough from enforcing the provisions of Ordinance #2013-7.

---

[3] The record contains several references to the Borough's apparent desire to remove the Fire Company's Chief and suggests the Borough filed a disciplinary complaint against him.

A-0751-13T4

Following oral argument, Judge Curio considered the legal issue presented. Reviewing the provisions of N.J.S.A. 40A:14-68, she rejected the Fire Company's contention that an external contract defining the relationship was mandated, thereby making the Borough's mere adoption of Ordinance #2013-7 ineffective to exercise the statutorily permitted supervision and control over the Fire Company. Rather, she concluded Ordinance #2013-7 sufficiently established the contract between the Borough and Fire Company and was "an appropriate exercise of authority by the Borough . . . pursuant to N.J.S.A. 40A:14-68." Next, the judge upheld Ordinance #2013-07 as enforceable, after excising three specific provisions: the portion of § 25.2 allowing the Borough to appoint the Fire Chief; the portion of § 25.3 requiring the Fire Company submit its bylaws, and presumably any amendments, to the Borough Council for approval; and the portion of § 25.5 providing the Borough retain ownership and control over the sign erected in front of the municipal building. Judge Curio noted the Borough can require approval of other Fire Company officers and mandate the Fire Company transmit a copy of its bylaws to the Borough Council.

On appeal, the Fire Company agrees N.J.S.A. 40A:14-68 is the source of authority allowing the Borough's involvement in its operation. However, the Fire Company challenges the trial

judge's determination that Ordinance #2013-7 complies with the scope of the permitted statutory authority.

"Municipal ordinances, like statutes, carry a presumption of validity." Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 564 (1975). "[A] law concerning municipal corporations formed for local government . . . shall be liberally construed in their favor." N.J. Const. art. IV, § 7, ¶ 11. Accordingly, a party challenging a municipal ordinance has a heavy burden. The presumption of validity "'may be overcome only by a clear showing that the local ordinance is arbitrary or unreasonable.'" Quick Chek Food Stores v. Springfield, 83 N.J. 438, 447 (1980) (quoting Hudson Circle Servicenter, Inc. v. Kearny, 70 N.J. 289, 298-99 (1976)).

We start our review by examining the scope of N.J.S.A. 40A:14-68, understanding questions of statutory interpretation are purely legal. In re Liquidation of Integrity Ins. Co., 193 N.J. 86, 94 (2007). In our de novo review of legal issues, we need not defer to the trial court's conclusions. In re Petition for Referendum on Trenton Ordinance 09-02, 201 N.J. 349, 358 (2010) (citing Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"'Our task in statutory interpretation is to determine and effectuate the Legislature's intent.'" Ibid. (quoting Bosland v. Warnock Dodge Inc., 197 N.J. 543, 553 (2009)).

> "In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language."
>
> [State v. Hupka, 203 N.J. 222, 232 (2010) (quoting N.J.S.A. 1:1-1).]

"We consider the statute at the center of this case in accordance with these principles." C.A. v. Bentolila, 219 N.J. 449, 460 (2014).

Many municipalities cannot support a full-time municipal fire force and instead rely upon volunteers to provide this essential public service. The volunteer fire companies are "not direct units of local government." Paff v. N.J. State Firemen's Ass'n, 431 N.J. Super. 278, 292 (App. Div. 2013) (citing Schwartz v. Stockton, 32 N.J. 141, 151 (1960)). "While such organizations are independent, incorporated as associations not for pecuniary profit, . . . they may, and generally do, have definite relationships with municipal governing bodies, . . . thereby giving them a kind of semi-official status." Schwartz,

supra, 32 N.J. at 151 (citation omitted). "'[T]he relationship between a volunteer fireman and the municipality is not that of master and servant in the true sense.'" Maggio v. Migliaccio, 266 N.J. Super. 111, 114-15 (App. Div.) (quoting Vogt v. Borough of Belmar, 14 N.J. 195, 206 (1954)), certif. denied, 134 N.J. 563 (1993). Nevertheless, volunteer fire departments have been recognized as quasi-public in nature. Sprint Spectrum, L.P. v. Borough of Upper Saddle River Zoning Bd. of Adjustment, 352 N.J. Super. 575, 598 (App. Div.), certif. denied, 174 N.J. 543 (2002).

The Legislature addressed the nature of municipal control of volunteer fire companies in N.J.S.A. 40A:14-68(a), originally effective on July 1, 1979:

> In any municipality not having a paid or part-paid fire department and force, the governing body, by ordinance, may contract with a volunteer fire company or companies in such municipality, for purposes of extinguishing fires, upon such terms and conditions as shall be deemed proper. The members of any such company shall be under the supervision and control of said municipality and in performing fire duty shall be deemed to be exercising a governmental function; however, the appointment or election of the chief of the volunteer fire company shall remain the prerogative of the membership of the fire company as set forth in the company's certificate of incorporation or bylaws.

The plain language of this statute reflects the Legislature's intent to assure governmental supervision and control of volunteer fire companies to the extent they are charged with performing public functions funded by public taxpayer resources. See McGovern v. Rutgers, 211 N.J. 94, 108 (2012) (holding "'we look first to the plain language of the statute,'" giving the words their ordinary meaning and deriving intent from the words the Legislature has chosen (quoting Bosland, supra, 197 N.J. at 553)).

The Fire Company insists the Borough's use of an ordinance ignored statute's requirement of providing a contract with the Fire Company to define the scope of governmental supervision and control. We reject this argument because the plain language of the statute provides the municipality's "governing body, by ordinance, may contract with a volunteer fire company . . . ." N.J.S.A. 40A:14-68(a) (emphasis added). We conclude these words unambiguously permit a municipality to use the mechanism of an ordinance as the contractual basis to set forth provisions assuring municipal supervision and control of members of the volunteer fire company it designates as the official entity to perform the public function of extinguishing fires.

Such a reading is consistent with prior interpretations of both the statute and a municipality's relationship with its

A-0751-13T4

volunteer fire company. In Migliaccio, this court found the adoption of an ordinance satisfied the statute, stating: "The record reveals that the Borough of West Long Branch adopted the necessary ordinance referred to in N.J.S.A. 40A:14-68 . . . ." Migliaccio, supra, 266 N.J. Super. at 115. Also, in Paff, we considered an ordinance defining the relationship when deciding a different issue. There, we concluded "[m]embers of volunteer fire companies serve 'under the supervision and control of [a] municipality and in performing fire duty shall be deemed to be exercising a governmental function[.]'" Paff, supra, 431 N.J. Super. at 292 (alterations in original) (quoting N.J.S.A. 40A:14-68). See also Guida v. Emerson, 17 N.J. Misc. 209, 211-12 (Dep't Labor 1939) (noting a municipality's recognition of a volunteer fire company by express agreement is accomplished by "the passage of an ordinance creating a department and stating the manner of control").

We also find unpersuasive the Fire Company's argument suggesting the Legislature reserved use of an ordinance to define the regulation and control of paid fire departments, pursuant to N.J.S.A. 40A:14-7, and chose to specify a contract to control volunteer fire companies pursuant to N.J.S.A. 40A:14-68. As Judge Curio aptly observed, use of a contract is superfluous when discussing a municipality's authority to form a

11                                              A-0751-13T4

paid fire department, as discussed in N.J.S.A. 40A:14-7. On the other hand, when addressing a municipality's relationship with a volunteer fire force it seeks to perform public firefighting functions, a municipal ordinance merely creates the conditions under which that volunteer fire company may act as the designated fire company of the municipality.

Turning to the attack on the scope of Ordinance #2013-7, the Fire Company maintains the Borough lacks authority to regulate the Fire Company, its members, or officers because the Fire Company is a private nonprofit corporation, separate and distinct from the Borough. The Fire Company relies on N.J.S.A. 15A:1-1 to 16-2, which are statutory provisions vesting rights in nonprofit corporations, such as the right to be governed by and make its own bylaws, N.J.S.A. 15A:2-9 to -11; the right to acquire real and personal property, N.J.S.A. 15A:3-1(a)(4); and the right to elect or appoint officers and define their duties, N.J.S.A. 15A:3-1(a)(10). We disagree with this assertion.

A well-recognized rule of statutory construction applies when one statute appears in conflict with another. Quite simply, specific statutory provisions govern general ones. State v. Robinson, 217 N.J. 594, 609 (2014); Tiffany Manor Assocs. v. Newark City, 18 N.J. Tax 190, 197 (Tax 1999). The broad, general nonprofit corporation statute yields to the

specific legislative direction governing a municipality's supervision and control of a designated volunteer fire company.

We further conclude the Fire Company is incorrect in asserting its activities and management are independent of municipal oversight and control. N.J.S.A. 40A:14-68(a) pointedly directs volunteer fire companies, whose members accept the role of performing the "governmental function" of "fire duty," serve "under the supervision and control of [the] municipality." Since volunteer firefighters perform a public service, the need for municipal supervision and control of the Fire Company is underscored, and the volunteer fire company is legally viewed as a state actor. "'[V]irtually every statutory reference concerning volunteer companies refers to fire protection as a governmental function.'" Pallister v. Spotswood First Aid Squad, 355 N.J. Super. 278, 281 n.2 (App. Div. 2002) (alteration in original) (quoting D'Eustachio v. City of Beverly, 177 N.J. Super. 566, 572 (Law Div. 1979)). See also Eggert v. Tuckerton Vol. Fire Co. No. 1, 938 F. Supp. 1230, 1240 (D.N.J. 1996) (holding a volunteer fire company is a state actor for purposes of 42 U.S.C.A. 1983); Schwartz, supra, 32 N.J. at 150 (holding volunteer fire companies are public entities for purposes of tort liability); State v. Quezada, 402 N.J. Super.

277, 283-84 (App. Div. 2008) (holding a volunteer firefighter is a public servant under N.J.S.A. 2C:27-1(g)).

In return, designated volunteer firefighters are afforded worker's compensation insurance as de facto municipal employees, see N.J.S.A. 34:15-43; Migliaccio, supra, 266 N.J. Super. at 115, and provided municipal contributions from funds raised through local tax assessments for equipment and a substantial portion of related firefighting expenses. N.J.S.A. 40A:14-33; N.J.S.A. 40A:14-34. A municipality may compensate volunteer firefighters for losses sustained in performing fire duties, N.J.S.A. 40A:14-36, and allocate space in municipal realty for their use. See N.J.S.A. 40:48-2 (defining a municipality's general powers to exercise authority for public welfare and safety).

The municipal management of volunteer fire companies as defined in N.J.S.A. 40A:14-68(a) is limited to "the authority to control the general affairs of a volunteer fire department," and a municipality "cannot dictate the day-to-day operations of the department." Sprint, supra, 352 N.J. Super. at 598 (citing 63 C.J.S. Municipal Corporations § 542 (1999)). This distinction is illuminated by the independent control retained by a fire company in "the appointment or election" of its Chief, "as set

forth in the company's certificate of incorporation or bylaws."

N.J.S.A. 40A:14-68(a).

Following our review, we find no flaw in Judge Curio's analysis, concluding Ordinance #2013-7, as excised, stays within the lines drawn by N.J.S.A. 40A:14-68(a). As the judge noted, the Borough may not retain the right to approve the elected Fire Chief or the Fire Company's bylaws, including any amendments.[4] With these modifications, we conclude Ordinance #2013-7 does not intrude into the day-to-day operations of the Fire Company, defined by its bylaws. See N.J.S.A. 15A:3-1(a)(11) (a nonprofit corporation's bylaws govern "the administration and regulation of the affairs of the corporation"). For example, Ordinance #2013-7 makes no attempt to invade the Fire Company's province to assign personnel; define essential tasks; require attendance; hold elections; abide by a membership code of conduct; develop tactical decision-making for fire protection, prevention and safety, particularly when fighting a fire; or regulate fundraising efforts.

In our view, Judge Curio's decision does nothing more than consider the validity of the ordinance, which we agree, once excised, presents a valid enforceable contract to the Fire

_____

[4] The judge's excise of the provision suggesting the Borough retains ownership of the Fire Company's sign is not specifically contested.

Company.  If the Fire Company accepts the terms in order to continue as the designated municipal fire force, it is entitled to benefits provided by law, as we have outlined above.  We emphasize, the Fire Company correctly asserts a contract requires a meeting of the minds and mutual assent.  See, e.g., Morton v. 4 Orchard Land Trust, 180 N.J. 118, 129-30 (2004); Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014).  Possibly the Fire Company's prior demonstrated dissatisfaction with the ordinance provisions may lead to a decision to end its long-standing role as the entity providing firefighting services for the Borough.  Prudence suggests any terms formulated in an ordinance governing the Fire Company would be mutually discussed, if not formulated by assent before passage.  Still, we are aware of nothing that precludes the Borough from adopting an ordinance defining the conditions it requires of any volunteer fire company seeking to act as the Borough's designated fire company.

Here, the Fire Company must accept these terms if it seeks to continue in its role as the designated municipal entity. Nevertheless, nothing prevents the Fire Company members from declining to voluntarily perform firefighting services under terms mandated by a valid ordinance, such as Ordinance #2013-7. If it chooses to do so, absent further negotiation and agreement

A-0751-13T4

with the Borough, its municipal firefighting status ceases, and the Borough has authority to assume possession and control of its real and personal property and to seek a replacement entity to perform the necessary fire functions. Raritan Engine Co. No. 2 v. Edison Twp., 184 N.J. Super. 159, 164-66 (App. Div. 1982).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION