**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2876-18

INDEPENDENT VOLUNTEER
FIRE COMPANY and JOSEPH
J. CARUSO, III,

      Plaintiffs,

and

JOSEPH CARUSO, JR.,
WILLIAM TOMASELLO,
JOHN H. WARREN, JR., and
JOHN MICHAEL WARREN,

      Plaintiffs-Respondents,

v.

TOWN OF HAMMONTON,

      Defendant-Appellant.

_____

      Submitted December 7, 2020 – Decided April 19, 2021

      Before Judges Messano, Hoffman and Suter.

      On appeal from the Superior Court of New Jersey, Law
      Division, Atlantic County, Docket No. L-0132-16.

Fox Rothschild, LLP, attorneys for appellant (Michael J. Malinsky, on the briefs).

Jacobs & Barbone, PA, attorneys for respondents (Louis M. Barbone, on the brief).

PER CURIAM

Plaintiffs Joseph Caruso, Jr., Joseph Caruso III, William Tomasello, John H. (J.H.) Warren, Jr., and John Michael (J.M.) Warren were members of the Independent Volunteer Fire Company No. 2 (the Company), one of two fire companies that provided volunteer firefighting services to the Town of Hammonton (the Town).[1]  On September 28, 2015, another member of the Company and its only female member, Nicole Ruberton, filed a formal complaint directly with the Town administrator alleging Tomasello and Caruso III sexually harassed her, and she feared retaliation from the other plaintiffs "because they are all family."  Never before had a member of either fire company filed a complaint alleging harassment directly with the Town administration.

---

[1]  During the litigation and for reasons unnecessary for our resolution of the appeal, the Company and Caruso III were dismissed from the litigation, and neither has participated in this appeal.

2

A-2876-18

At its regular meeting the same day, the Town council suspended all plaintiffs and appointed the town solicitor to investigate Ruberton's complaint.[2] A second member of the Company, Enrico Sepe, also filed a complaint with the Town, alleging Tomasello harassed him because he was a dwarf. After the solicitor interviewed J.H. Warren, Jr., and J.M. Warren and absolved them of any misconduct, the Town reinstated both to full membership in the Company ten days later, on October 8, 2015.

In January 2016, plaintiffs filed a verified complaint in lieu of prerogative writs. They alleged the Town violated N.J.S.A. 40A:14-19, which provides that a "member or officer of [a] paid or part-paid fire department or force shall be . . . suspended, removed, fined or reduced in rank . . . only upon a written complaint setting forth the . . . charges" and a hearing thereafter. (emphasis added). Citing these specific statutory procedural guarantees, each plaintiff claimed the Town violated his civil rights, specifically, "depriv[ation] of procedural and substantive due process, equal protection of the law, as well as privileges and/or immunities secured by the Constitution, and laws of the State of New Jersey[.]" Within days of plaintiffs' filing, the Town lodged formal

---

[2] Additionally, based on a traffic summons issued in an alleged "road rage" incident, the Town terminated Caruso III's membership in the Company.

A-2876-18

written disciplinary charges with specifications against Caruso, Jr. and Tomasello.

The Town then moved to dismiss plaintiffs' complaint. Apparently without any cross-motion by plaintiffs and relying not upon N.J.S.A. 40A:14-19, but rather certain Town ordinances, the judge denied the motion to dismiss and granted relief on plaintiffs' prerogative writ claim. He ordered the Town to appoint "an independent hearing officer[] and provide . . . [p]laintiffs with a statement of charges, a period of discovery, and a hearing" within one-hundred-twenty days.

Before the hearing took place, the Town reinstated Caruso, Jr., who by then had been suspended for thirteen months. Following several days of testimony, the hearing officer found Tomasello guilty of three disciplinary charges, none of which dealt with Ruberton's complaints, but one of which dealt with Sepe's complaints, and dismissed the other charges. He recommended Tomasello's now nineteen-month suspension as an appropriate penalty. The Town adopted the hearing officer's findings and recommendations and reinstated Tomasello.

The Town moved for summary judgment on plaintiffs' remaining civil rights claims. A different judge partially granted the Town's motion, dismissing

4

plaintiffs' procedural and substantive due process causes of action; she denied summary judgment as to plaintiffs' equal protection claims, and the matter proceeded to trial.[3]

The jury found in favor of all four plaintiffs on their "class-of-one" equal protection claims and awarded $15,000 each to Caruso Jr., and Tomasello, and $25,000 each to J.H. Warren Jr., and J.M. Warren. The jury declined to award punitive damages. Plaintiffs subsequently sought counsel fees as prevailing parties under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 (the CRA), and the judge awarded them $85,963.06 in attorney's fees and costs. The judge stayed execution of the judgment pending this appeal.

The Town argues that the first judge erred in granting plaintiffs relief on their prerogative writ claim because, as members of a volunteer firefighting department, plaintiffs were not entitled to the protections of N.J.S.A. 40A:14-19, and the judge misinterpreted the relevant ordinances. It notes that in granting summary judgment on plaintiffs' due process claims, the second judge

_____

[3] The order and the judge's extensive decision did not address plaintiffs' claims under the privileges and immunities clauses of Article IV or the Fourteenth Amendment of the United States Constitution. Plaintiffs have not cross-appealed from the order dismissing their due process cause of action and neither party has addressed the apparent dismissal of plaintiffs' claims under the privileges and immunities clauses in their brief.

A-2876-18

essentially adopted the Town's position that it did not violate plaintiffs' procedural rights by immediately suspending them.

The Town further contends that the trial judge should have dismissed plaintiffs' class-of-one equal protection claims as a matter of law, either on summary judgment, or when the Town sought involuntary dismissal after plaintiffs' case pursuant to Rule 4:37-2(b), or judgment at the conclusion of all the evidence pursuant to Rule 4:40-2(a), or judgment notwithstanding the verdict pursuant to Rule 4:40-2(b). As a corollary argument, the Town contends the judge should have dismissed the complaints of J.H. Warren, Jr. and J.M. Warren because they were reinstated within ten days of their suspensions. Finally, the Town contends it was error to submit the issue of punitive damages to the jury, and the judge mistakenly exercised her discretion in calculating the fee award.

We have considered these arguments in light of the record and applicable legal standards. We affirm in part, reverse in part, vacate the judgment, including the award of fees and costs, and dismiss plaintiffs' complaint.

A-2876-18

I.

New Jersey's statutory scheme distinguishes three types of firefighting forces: paid, part-paid, and volunteer. N.J.S.A. 40A:14-7 and -68. In municipalities without paid or part-paid fire departments,

> the governing body, <u>by ordinance, may contract with a volunteer fire company</u> or companies . . . <u>upon such terms and conditions as shall be deemed proper</u>. The members of any such company <u>shall be under the supervision and control of said municipality</u> and <u>in performing fire duty shall be deemed to be exercising a governmental function</u>; however, the appointment or election of the chief of the volunteer fire company shall remain the prerogative of the membership of the fire company as set forth in the company's certificate of incorporation or bylaws.
>
> [N.J.S.A. 40A:14-68(a) (emphasis added).]

As we made clear in <u>Newfield Fire Co. No. 1 v. Borough of Newfield</u>, "[t]he plain language of this statute reflects the Legislature's intent to assure governmental supervision and control of volunteer fire companies to the extent they are charged with performing public functions funded by public taxpayer resources." 439 N.J. Super. 202, 210–11 (App. Div. 2015) (citing <u>McGovern v. Rutgers</u>, 211 N.J. 94, 108 (2012)). However, "[t]he municipal management of volunteer fire companies . . . is limited to 'the authority to control the general affairs of a volunteer fire department,' and a municipality 'cannot dictate the day-

to-day operations of the department.'" Id. at 213–14 (quoting Sprint Spectrum, LP v. Borough of Upper Saddle River Zoning Bd. of Adjustment, 352 N.J. Super. 575, 598 (2002)).

In moving to dismiss the complaint, and, more pointedly when it sought reconsideration of the order denying its motion, the Town argued that by its terms, N.J.S.A. 40A:14-19 only applies to a "permanent member or officer of [a] paid or part-paid fire department." Plaintiffs, however, cited Hammonton Ordinance 25-2 (O25-2), which provided, "[t]he several fire companies composing said Fire Department shall be subject to all the laws of this state pertaining to fire departments in towns and may receive any benefits resulting therefrom." According to plaintiffs, the Town had extended the statutory procedural rights contained in N.J.S.A. 40A:14-19 to its volunteer firefighters. The motion judge correctly rejected the argument.

However, in denying the Town's motions to dismiss and for reconsideration, the judge focused his attention on two other ordinances. Hammonton Ordinance 25-6 (O25-6) provided that "[f]or any cause deemed sufficient, [the] council may reprimand, suspend or remove from office the chief or any officer or officers of any of the companies composing the fire department." The Town argued that under this ordinance, the council could

A-2876-18

discipline plaintiffs without providing any written statement of charges or a hearing.

However, Hammonton Ordinance 25-5 (O25-5) provided:

> The various fire companies composing the Fire Department . . . may impose suitable fines or other penalties on the members in order to promote discipline and maintain efficiency of the Fire Department. The Fire Chief shall have the power to compel each or all of the companies to observe the provisions of this section as well as any rules that may be adopted by the several companies . . . .

In initially denying the Town's motion to dismiss, the judge wrote: "Section 25-5 creates a mechanism by which the Fire Department can discipline its own officers." He reasoned, because plaintiffs "were entitled to some minimum level of due process," the Town must provide plaintiffs with written charges, discovery, and a hearing. In denying reconsideration, the judge added that "there was sufficient ambiguity as to the whether the Company or the [c]ouncil has primary disciplinary authority." In construing the two provisions together, the judge concluded that plaintiffs were entitled to have the Company initially consider the charges and decide whether to discipline plaintiffs.

In <u>Versarge v. Township of Clinton</u>, a volunteer fire company sought to expel the plaintiff for conduct unbecoming, specifically, threatening the chief and disclosing fire company business to the mayor and council. 984 F.2d 1359,

9 <span style="float:right">A-2876-18</span>

1361–62 (3d. Cir. 1993). After a hearing before the company at which the plaintiff was afforded the opportunity to address the charges, the membership voted to expel him. Id. at 1362. The mayor and council refused to hear his appeal, so the plaintiff filed suit, alleging, in part, violations of his due process rights. Id. at 1362–63.

The district court rejected the due process claim, concluding that the plaintiff had "received all the process he was due." Id. at 1370. The Third Circuit somewhat modified that holding, concluding that because any benefits received by the plaintiff from his status as a volunteer firefighter "were de minimis[,]" he "was not entitled to the constitutional requirements of due process." Ibid. In the absence of the Ordinances, therefore, we might agree with the Town that plaintiffs had no constitutional or statutory right to notice of the charges and a hearing.

However, the Ordinances essentially form the contract between the Town and the Company referenced in N.J.S.A. 40A:14-68(a), and "nothing . . . preclude[d] the [Town] from adopting an ordinance defining the conditions it requires of any volunteer fire company seeking to act as the [Town's] designated fire company." Newfield Fire Co., 439 N.J. Super. at 215. The motion judge

was faced with the need to construe the seemingly contradictory language of O25-5 and O25-6 in pari materia.

Because the issues are purely legal in nature, we owe no deference to the motion judge's interpretation of the ordinances or the implied contract they represent, and we review the judge's order de novo. See Bubis v. Kassin, 184 N.J. 612, 627 (2005) ("As with other legislative provisions, the meaning of an ordinance's language is a question of law that we review de novo." (first citing In re Distrib. of Liquid Assets Upon Dissolution of the Union Cnty. Reg'l High Sch. Dist. No. 1, 168 N.J. 1, 11 (2001); and then citing DePetro v. Twp. of Wayne Plan. Bd., 367 N.J. Super. 161, 174 (App. Div. 2004))); see also Serico v. Rothberg, 234 N.J. 168, 178 (2018) ("In the absence of a factual dispute, we review the interpretation of a contract de novo." (citing In re Cnty. of Atlantic, 230 N.J. 237, 255 (2017))).

The Town argues that given the permissive language of O25-5 and O25-6, the ability to discipline members of the Company was co-extensive and shared by the council and the Company. In exercising its authority, the council was not required to provide any notice of the charges or a hearing prior to suspending plaintiffs.

Plaintiffs concede that the ordinances provide contractual terms that bind the Company. However, they contend that subsequent testimony at trial demonstrated O25-6 limited the council's disciplinary authority to "line officers," the appointed chief, assistant chief and officers selected from both companies that make up the command structure of the fire department. Plaintiffs argue the trial testimony demonstrated that as to the "staff officers" of the Company, i.e., its president, vice-president, et cetera, O25-5 controlled and "the [T]own had no authority of discipline." According to plaintiffs, the motion judge correctly ordered the Town to proffer formal charges and provide them with a hearing.

"The established rules of statutory construction govern the interpretation of a municipal ordinance." State v. Schad, 160 N.J. 156, 170 (1999) (citing AMN, Inc. of N.J. v. Twp. of S. Brunswick Rent Leveling Bd., 93 N.J. 518, 524–25 (1983)). We first examine the language of the ordinance, which if "clear and unambiguous" controls. Ibid. (citing Bergen Com. Bank v. Sisler, 157 N.J. 188, 202 (1999)). Otherwise, we may resort to "extrinsic factors," including the purpose, context, and history of the enactment. Ibid.

"Statutes are considered to be in pari materia when they relate to the same person or thing, to the same class of persons or things, or have the same purpose

or object." Carlson v. City of Hackensack, 410 N.J. Super. 491, 497 (App. Div. 2009) (quoting Marino v. Marino, 200 N.J. 315, 330 (2009)). "Statutes in pari materia are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent." In re Return of Weapons to J.W.D., 149 N.J. 108, 115 (1997) (quoting State v. Green, 62 N.J. 547, 554–55 (1973)).

In this case, O25-5 and O25-6, while clear on their respective faces, are difficult to reconcile when placed side by side. As noted, the motion judge confronted only a motion to dismiss plaintiffs' complaint, and, at several points in his opinion, he applied the appropriately indulgent standard under Rule 4:6-2(e). See Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 107 (2019) ("[R]eview of a complaint's factual allegations must be 'undertaken with a generous and hospitable approach.'" (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989))). Although we have not been provided with any documents supporting the Town's motion to dismiss, or plaintiffs' opposition to the motion, it would appear the judge essentially granted plaintiffs' summary judgment on their prerogative writ claim based solely on the complaint and the ordinances.

Neither O25-5 nor O25-6 mandate that written charges must be filed and a hearing take place before a member of the Company could be disciplined. If the judge concluded that the Company had the initial responsibility to discipline its members, we fail to see why he did not refer the Ruberton and Sepe complaints for an administrative hearing before the Company. We therefore disagree with the judge's apparent conclusion that O25-5 compelled referral of the matter to an outside hearing officer.

To reconcile the ambiguity created by the two ordinances, we consider extrinsic evidence, unavailable to the motion judge when he rendered his decisions. In support of its later-filed summary judgment motion, the Town supplied the fire department's "Rules of Conduct/Disciplinary Code" (the Code), part of the department's "personnel management policy" which applied to the Company and its counterpart, Independent Volunteer Fire Company No. 1 (No. 1).[4] In addition to defining standards of conduct, the Code included disciplinary procedures for members of the fire department, with the more serious forms of discipline, i.e., suspension and dismissal, which required initiation by an officer. If such serious forms of discipline were invoked, the Code required the filing of

---

[4] Later trial testimony asserted the Code had been drafted by a former fire chief but was never formally adopted by the Town council.

A-2876-18

written charges by an officer and a formal hearing. Only the chief of the department or his designee could suspend a member, after which, before any final discipline was imposed, a formal hearing before the "Hearing Committee" was available to the member.

In 2013, the Town council passed Resolution 29-2013, which adopted a handbook for both the Company and No. 1 as the official policies, procedures, rules, and regulations applicable to all the Town's volunteer firefighters. The handbook provided that firefighters who

> observe actions they believe to constitute harassment, sexual harassment, or any other workplace wrongdoing should immediately report the matter to their supervisor, or, if they prefer, or do not think that the matter can be discussed with their supervisor, they should contact the Fire Chief or Assistant Fire Chief if they believe the Fire Chief cannot be impartial.

Reports of harassment would be promptly investigated. If the investigation substantiated the complaint, disciplinary action would be "swiftly pursued." The handbook included form complaints to utilize; Ruberton and Sepe used these forms in making their complaints to the Town Administrator.

With the benefit of this extrinsic evidence, we conclude that for purposes of N.J.S.A. 40A:14-68, the contract between the Town and the Company, formed by the two ordinances and the extrinsic material we have cited, called

15

for complaints, such as those made by Ruberton and Sepe, to be first made to the Company pursuant to the duly adopted handbook and O25-5.[5]  Ultimately, however, O25-6 gave the Town council the authority to, "[f]or any cause deemed sufficient, . . . reprimand, suspend or remove from office the Chief or any officer or officers of any of the companies composing the Fire Department."  (emphasis added).  Because the ordinance applies to "officers of any of the companies," we reject the false distinction plaintiffs draw, limiting the council's disciplinary authority to appointed officers of the Fire Department and not elected officers within each company.  This interpretation is consistent with N.J.S.A. 40A:14-68(a), which provides that every member of a volunteer firefighting company "shall be under the supervision and control" of the municipality.

---

[5]  The resolution adopting the handbook contains an explicit disclaimer, stating the handbook was "not intended to be construed actually or by implication as a contract and does not supersede County, State or Federal regulations pertaining to [v]olunteer [fire] [c]ompanies or [v]olunteer [f]ighters."  However, the resolution must be read in conjunction with O25-5, which provided some level of disciplinary authority over firefighters, including for violations of applicable rules and regulations.  We agree the disclaimer is clear evidence that contrary to plaintiffs' continuous assertions throughout this litigation, the Town never intended to and did not adopt the statutory procedural guarantees provided to paid and part-paid fire department members by N.J.S.A. 40:14A-19.

A-2876-18

We therefore affirm, as modified, the motion judge's orders denying the Town's motion to dismiss and its motion for reconsideration of that denial.[6]

## II.

In denying the Town's motion for summary judgment on plaintiffs' CRA claims, the trial judge reasoned that plaintiffs'

> arguments . . . as to the implications of [O25-2] raise a serious material question of fact regarding whether [O25-2] creates greater rights and protection for them than those set forth in N.J.S.A. 40A:14-68. It is the vague and expansive language of this Ordinance, taken together with all legitimate inferences favoring the [p]laintiffs, which requires submission of this issue to the trier of fact.

Turning to plaintiffs' class-of-one equal protection claim, the judge noted their contention that O25-2 and O25-5 provided them with the procedural benefits of N.J.S.A. 40A:14-19 or "fundamental due process," because the Town

---

[6] We take judicial notice, see N.J.R.E. 201(a), of amendments to the ordinances at issue. See Hammonton, N.J., Code § 25-7 to -10 (2019). We have addressed the issue, rather than dismiss it as moot, for the sake of completeness and to place the summary judgment motion and trial that followed in correct context.

In addition, we reject the Town's argument that the trial judge's partial grant of summary judgment dismissing plaintiffs' due process claims implicitly reversed the motion judge's orders. Certainly, in dicta, she disapproved of the motion judge's, and now our, interpretation of O25-5 and O25-6. Her decision to grant partial summary judgment, however, was premised more squarely on the de minimis benefits plaintiffs enjoyed as volunteer firefighters. Versarge, 984 F.2d at 1370.

"determined that its volunteer firefighters were to be treated similarly to paid or part-paid firefighters in New Jersey." Because they were suspended "without any process," plaintiffs contended "the Town treated [them] differently from others similarly situated." In denying summary judgment, the judge reasoned, "If the Town intended to convey . . . the same rights and benefits as paid or part-paid firefighters . . . , then a jury could find that [p]laintiffs were treated differently than other firefighters similarly situated." In other words, for purposes of their equal protection claim, the judge believed the treatment accorded plaintiffs was to be compared to the treatment accorded firefighters in paid and part-paid fire departments throughout the State.

The Town's reconsideration motion asserted, among other things, that the judge erred in leaving the meaning of O25-2 to a jury to determine. It noted that having already dismissed plaintiffs' due process claims, plaintiffs' class-of-one equal protection claim based upon the procedural protections guaranteed by N.J.S.A. 40A:14-19 must also fail. Again, noting the broad language of O25-2, the judge apparently reconsidered her earlier statement and recognized the Town did not actually "subject [its volunteer firefighters] to 'all the laws of [New Jersey] pertaining to fire departments.'" She concluded the issue involved

"implementation" of the ordinance, which in turn required resolution of factual disputes.

### III.

We need not summarize the trial testimony in great detail. In 2015, the Company had twenty-seven firefighters, as well as three junior firefighters, that assisted with gear and apparatus but did not actually fight fires. Nicole Ruberton's husband, Michael, was chief of the fire department and chief of the Company. Chief Ruberton was also employed as the Town's fire inspector, and his supervisor was Frank Domenico, who was also captain of No. 1. Domenico had been chief of the department from 2001 to 2007.

Caruso Jr. had been with the fire department for thirty years and was president of the Company; Tomasello joined the Company in 1990, was a captain and supervised Nicole Ruberton. Tomasello's brother-in-law, J.M. Warren, was also a captain of the Company. His father, J.H. Warren Jr. was treasurer of the Company.

In broad terms, plaintiffs denied ever sexually or otherwise harassing Nicole Ruberton or Sepe. Instead, they painted a picture of being the victims of vindicative action by the Town's mayor, Steve DiDonato, who was aligned with Domenico and Chief Ruberton. In particular, there was testimony about specific

A-2876-18

complaints made against Domenico, who, plaintiffs claimed, had a difficult personality; some said he behaved in an unsafe manner at fire scenes.

On December 21, 2014, Tomasello reported that Domenico illegally drove over a median on the Atlantic City Expressway (the Expressway incident) and got into a verbal confrontation with J.M. Warren, who at that time was assistant chief; because of the Expressway incident, Domenico imposed a thirty-day suspension on himself. There had been previous intra-department complaints made by Tomasello and others about Domenico's behavior.

On December 23, 2014, Chief Ruberton called J.M. Warren to discuss the Expressway incident and put Domenico on the phone. Domenico warned J.M. Warren not to continue with the "lynch mob" and threatened that if members of the Company continued to take further action against him regarding the Expressway incident, they would be suspended.

On December 26, 2014, J.M. Warren filed a report regarding the phone call and Tomasello sent the report to Chief Ruberton. According to Tomasello, Domenico began to retaliate against him and Caruso Jr., accusing them of discrimination and harassment. Tomasello wrote an email to the mayor about Domenico's allegations and detailed the history of his relationship with Domenico.

A-2876-18

When Nicole Ruberton filed her complaint, plaintiffs were shocked by their immediate suspension and that the nature of the complaint was made public and disclosed in the local press. The Company had a disciplinary board that met and handled complaints about firefighter's behavior at fire scenes; a membership committee convened to resolve disputes between members in other contexts. Plaintiffs asserted that members of the department were always disciplined from within.

A few days after the suspensions, Joseph Lizza, secretary of the Company, recorded a meeting where the mayor spoke to all members of the fire department. The mayor gave reasons for the suspensions and alluded to alleged inappropriate remarks made by one plaintiff at the January 2015 department installation dinner. The mayor said that he "got the goods" on the firefighters and warned what was coming if they got out of line.

Chief Ruberton's deposition testimony was read to the jury. He acknowledged placing the December 2014 phone call to J.M. Warren but did not know that Domenico had threatened members if they continued to speak out about the Atlantic Expressway incident. When his wife spoke to him about filing a harassment complaint, Chief Ruberton instructed her to speak to the assistant chief, and not the Town council. He also corroborated that the fire

department had followed the procedures in its Code regarding discipline of members.

We discuss the judge's jury instructions on plaintiffs' class-of-one equal protection claims below. For now, it suffices to say that the jury was provided with a verdict sheet that asked it to answer the following questions:

> 1. Have plaintiffs proven . . . that . . . [O25-2] provides volunteer firefighters with the similar rights and benefits of paid or part-paid firefighters in the [S]tate of New Jersey?
>
> 2. Have plaintiffs proven . . . that they are similar in all relevant and material respects, or have a high degree of similarity to a comparator, namely . . . Domenico?
>
> 3. Have plaintiffs proven . . . that they were treated differently from other similarly situated firefighters?
>
> 4. Have plaintiffs established . . . that the difference in treatment . . . was done intentionally?
>
> 5. Have plaintiffs established . . . that defendant had no rational basis for the difference in treatment . . . ?

The jury answered all five questions in the affirmative. The verdict sheet then directed jurors to consider, as to each plaintiff, if the "difference in treatment" proximately caused that plaintiff's injuries. Having answered in the affirmative as to all four plaintiffs, the jurors then awarded damages that would reasonably compensate each plaintiff for his injuries.

IV.

As already noted, the Town repeatedly asserted that O25-2 did not confer the same procedural rights enjoyed by members of paid or part-paid fire departments pursuant to N.J.S.A. 40A:14-19 on members of the Company. The trial judge never decided that legal issue. Instead, she concluded there was a factual issue for the jury to resolve whether in its implementation of O25-2, the Town intended to accord the same statutory rights to its volunteer firefighters.

In his summation, plaintiffs' counsel harped on this issue. He referred to O25-2 and told jurors that plaintiffs were entitled to the same rights as Jason Macri, one of plaintiffs' witnesses, who was a paid firefighter in Cherry Hill. At one point, counsel said:

> The government has no business being involved in a private business or company. And here, it's not my opinion that the mayor . . . and council should be uninvolved. It's the law. Why is it the law? Because after the particular part of the ordinance talking about we are entitled and may receive the benefits of [S]tate law, what benefits are we talking about? We're talking about the benefits that you do not throw me out of my building. You don't call me a sexual harasser unless you prove me guilty.
>
> You can't just do what you want. You've got to charge me. You've got to prove it. I'm entitled to a fair hearing. This is America. . . . Those are the rights of paid firefighters.

23

A-2876-18

In denying the Town's reconsideration motion, the trial judge seemingly recognized that O25-2 did not confer the same rights and benefits as those enjoyed by firefighters in paid or part-paid departments. She cited several examples of benefits not enjoyed by plaintiffs as volunteers. Nevertheless, question one on the verdict sheet asked whether O25-2 provided plaintiffs with the same rights as those enjoyed by firefighters in paid and part-paid departments.

In her final jury charge, the judge never defined for the jury precisely what were the "similar rights and benefits of paid or part-paid firefighters in the State of New Jersey" that the ordinance bestowed on plaintiffs. The closest the judge came was when she laid out each party's contentions at the start of her instructions. The judge told the jurors that plaintiffs alleged the Town violated "their fundamental rights of equal protection by taking certain actions against plaintiffs without first conducting an investigation, without having a hearing, and without a legitimate basis to charge plaintiffs." Of course, the judge had already decided that the denial of those "rights" were not due process violations.

Construing the ordinance was a purely legal issue that should have been decided by the judge. Bubis, 184 N.J. at 627. We agree with the Town that it was clear error for the court to pose question one to the jurors. We have

concluded that a reasonable construction of the various ordinances and handbook meant that Ruberton's and Sepe's complaint should have first been referred to the fire department for resolution, although the Town retained its ultimate authority to suspend or dismiss the officers for "any cause deemed sufficient." The jury should have been instructed that this was the legal framework in which to consider plaintiffs' class-of-one equal protection claims.

There were other serious problems with the verdict sheet and jury charge. We digress to explain the framework for a viable class-of-one equal protection cause of action.

A class-of-one equal protection claim may be asserted "even when the plaintiff has not alleged discrimination on the basis of membership in a protected class." DiBuonaventura v. Washington Twp., 462 N.J. Super. 260, 267–68 (App. Div. 2020) (citing Engquist v. Or. Dep't of Agric., 553 U.S. 591, 598 (2008)). "Such 'class-of-one' claims require that a plaintiff show that he or she was (1) intentionally treated differently from other people who are similarly situated, and (2) there is no rational basis for the difference in treatment." Id. at 268 (citing Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). "Regarding the first element, '[p]ersons are similarly-situated under the Equal Protection Clause when they are alike in "all relevant aspects."'" Radiation Data,

Inc. v. N.J. Dep't of Env't Prot., 456 N.J. Super. 550, 562 (App. Div. 2018) (alteration in original) (quoting Startzell v. City of Phila., 533 F.3d 183, 203 (3d Cir. 2008)).

Here, who was an appropriate comparator and what was being compared were moving targets throughout trial. As noted, plaintiffs' counsel's summation contended the proper comparators were firefighters in paid or part-paid fire departments, because the Town's implementation of O25-2 was intended to provide its volunteer firefighters with the same procedural due process rights. In the jury's mind, this was affirmed by question number one, which asked them to decide that exact issue. Yet, question two on the verdict sheet asked the jury to decide if plaintiffs were similarly situated not to firefighters in paid or part-paid departments, but rather whether they were similarly situated to Domenico.

When providing instructions on the class-of-one equal protection claim, the judge told the jurors: "As to the class-of-one claim only" — there was no other claim at this point — "plaintiffs allege that the other volunteer firefighters in the [T]own . . . were treated more favorably than the plaintiffs for the same or similar conduct of the plaintiffs, and that there was no rational basis for the difference in treatment." We may assume the jury understood who plaintiffs claimed was the appropriate comparator, since question two asked jurors to

consider plaintiffs' proofs as to Domenico. Yet, in question three, the jury was asked if plaintiffs had proven "that they were treated differently from other similarly situated firefighters"; in other words, not treated differently than Domenico, but rather other "firefighters." Certainly, the jury could have reasonably concluded they were comparing plaintiffs to firefighters in paid and part-paid departments.

Nor did the judge ever define what exactly the jurors were supposed to compare. Plaintiffs' counsel's summation stressed the fact that his clients were disciplined without any hearing. However, if it were differences in the procedural aspects of how discipline was imposed within the Town's fire department, and plaintiffs were contending they were singled out for discipline by the Town without the procedures outlined in the Code or handbook, Domenico failed as a comparator. It was undisputed that Domenico imposed a suspension on himself for the Expressway incident without any hearing at all. Was the jury to compare the length of Domenico's suspension — four months — versus the much longer suspensions served by Caruso, Jr. and Tomasello? If so, that was never explained by the judge.

Indeed, any difference in the length of suspensions between those imposed on plaintiffs and those imposed on other firefighters or how the discipline was

27

imposed could not support a viable class-of-one equal protection claim as a matter of law. "[T]he United State[s] Supreme Court has ruled that Fourteenth Amendment class-of-one claims do not apply to public employment." DiBuonaventura, 462 N.J. Super. at 268 (citing Engquist, 553 U.S. at 594). As we explained:

> In Engquist, the Court . . . held that a public employee cannot state a claim under the Equal Protection Clause by alleging that she was fired from her job for arbitrary and malicious reasons that essentially singled her out as a class-of-one. Specifically, plaintiff argued that she was denied a promotion, and ultimately laid-off because of a grudge held by a supervisor. The Court reasoned that the Equal Protection Clause is not implicated in circumstances where "government employers are alleged to have made an individualized, subjective personnel decision in a seemingly arbitrary or irrational manner." The Court went on to reason that the class-of-one theory of equal protection is simply a "poor fit in the public employment context" and that to treat employees differently is not to "classify them in a way that raises equal protection concerns," but rather is "simply to exercise the broad discretion that typically characterizes the employer-employee relationship."
>
> [Ibid. (quoting Engquist, 553 U.S. at 594, 605); accord Conard v. Pa. State Police, 360 F. App'x 337, 339 (3d Cir. 2010); Houston v. Twp. of Randolph, 934 F. Supp. 2d 711, 736–37 (D.N.J. 2013).]

28

Plaintiffs fail to cite a single case in which a class-of-one equal protection claim was successfully brought in the sphere of public employment, and we found none.

Plaintiffs' retort to this was and continues to be that they are not public employees. In Newfield Fire Co., we noted that volunteer fire companies "are 'not direct units of local government.'" 439 N.J. Super. at 210 (quoting Paff v. N.J. State Firemen's Ass'n, 431 N.J. Super. 278, 292 (App. Div. 2013)). "Nevertheless, volunteer fire departments have been recognized as quasi-public in nature." Ibid. (emphasis added) (citing Sprint Spectrum, LP v. Borough of Upper Saddle River Zoning Bd. of Adjustment, 352 N. J. Super. 575, 598 (App. Div. 2002)).

The Court has differentiated between the status of a voluntary firefighter and that of a voluntary emergency medical technician. State v. Morrison, 227 N.J. 295 (2016). "[A] volunteer firefighter [is] a public servant for purposes of the official-misconduct statute." Id. at 317 (citing State v. Quezada, 402 N.J. Super. 277, 284–85 (App. Div. 2008)). "New Jersey law has consistently recognized that firefighting is a public or governmental function." Ibid. (emphasis added) (quoting Eggert v. Tuckerton Volunteer Fire Co. No. 1, 938 F. Supp. 1230, 1238 (D.N.J. 1996)). In Schwartz v. Borough of Stockton, the

Court held that "fire protection . . . is a governmental function" and that "principle necessarily extends to municipal arrangements with volunteer companies." 32 N.J. 141, 150 (1960). Differences in the discipline imposed on a volunteer firefighter, whether imposed after procedures within the fire department or imposed in some other fashion by the governing body, cannot be the basis for a viable class-of-one equal protection claim.

Having carefully reviewed the trial record, we agree with the Town that it was entitled to judgment in its favor on plaintiffs' class-of-one equal protection claims. Once their due process claims were properly dismissed, plaintiffs' shapeshifting equal protection claim was dubious at best, initially asserting comparisons between themselves and firefighters in paid and part-paid departments, then inviting comparison to a vindictive Domenico. In reality, plaintiffs' true claim was that their discipline was a vendetta carried out by the Town's mayor, Domenico, and others. That assertion is insufficient to support a class-of-one equal protection claim in the sphere of public employment. See Engquist, 553 U.S. 595 (rejecting public employee's claim she was fired for

"arbitrary, vindictive, and malicious reasons" as cognizable under class-of-one equal protection jurisprudence).[7]

Affirmed in part and reversed in part. We vacate the judgment entered, including the award of counsel fees and costs, and dismiss plaintiffs' complaint. As a result of our judgment, we need not address the other issues raised by the Town.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7] Plaintiffs did not assert a claim that the Town violated their First Amendment rights by punishing them for complaints made about Domenico's behavior. Such a claim would be subject to a different analysis, even in the public employee-public employer context. See Engquist, 553 U.S. at 599–600 (discussing controlling principles governing a claimed violation of a public employee's First Amendment rights).