NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

EREZ HOLDINGS URBAN RENEWAL, :    TAX COURT OF NEW JERSEY
LLC, :

    :    DOCKET NO.   013941-2018

           Plaintiff, :

        v. :

DIRECTOR, DIVISION OF TAXATION, :
and
TOWNSHIP OF LAKEWOOD, :

           Defendants. :

           :

> Approved for Publication
> In the New Jersey
> Tax Court Reports

Decided: February 1, 2022

Catherine J. Bick for plaintiff
(Giordano, Halleran & Ciesla, P.C., attorney).

Harold N. Hensel for defendant
(Secare & Hensel, attorney).

Joseph A. Palumbo and Anthony D. Tancini for defendant
(Andrew J. Bruck, Acting Attorney General of New Jersey, attorney).

SUNDAR, P.J.T.C.

This opinion decides plaintiff's challenge to the final determination of defendant, Director, Division of Taxation (Director), who affirmed the Non-Residential Development Fee (NRDF) imposed by defendant, Township of Lakewood (Lakewood) under N.J.S.A. 40:55D-8.4. In so affirming, the Director rejected plaintiff's claim that the NRDF should be computed by assigning $0 as the equalized assessed value of the improvements because they are exempt from local property tax under the Long-Term Tax Exemption law (LTTEL), N.J.S.A. 40A:20-1 to -22. The Director moved for summary judgment claiming that his final determination should be upheld since the NRDF should be computed on the equalized assessed value of the entire property (land and improvements) regardless of the LTTEL. Plaintiff (Erez) cross-moved for summary judgment

*

arguing the contrary: that the NRDF should be computed only on the equalized assessed value allocated to land because the improvements are tax exempt. In other words, Erez urges that the NRDF and the LTTEL statutes should be interpreted in pari materia, thus, the tax exemption provided by the latter should be incorporated into the former. In addition, Erez, for the first time, raised the issue that Lakewood improperly computed the NRDF because it did not exclude the parking lot which improvement is specifically exempt from the fee.

For the reasons following, the court finds that Lakewood correctly included the equalized assessed value of the improvements in computing the NRDF. Although Erez raised the parking lot issue for the first time during this litigation, neither defendant disputed that the value of the parking lot is exempt from the NRDF, did not object to its consideration on the merits, nor did they claim that either was prejudiced in this regard. The court also provided time and opportunity for the parties to resolve the excludable amount prior to deciding the summary judgment motions, however, they were unable to do so. Therefore, and pursuant to R. 8:3-8(a) and R. 4:9-2, the court decides the parking lot issue. Based on the evidence presented, the court concludes that Erez has failed to persuade the court that the value of the parking lot to be excluded for purposes of calculating the NRDF should be $3,407,000. The court therefore affirms the Director's final determination.

**FACTS AND PROCEDURAL HISTORY**

The undisputed facts are as follows. On June 1, 2000, Lakewood adopted a Redevelopment Plan Amendment to include an area called Cedarbridge Redevelopment Area (Area). The Area, zoned DA-1, included Block 961.01, Lot 2.06 (Subject) which measures 5.348 acres. A vacant lot, the Subject was owned by Lakewood, and thus was tax exempt for local property tax (LPT)

2

purposes. Lakewood agreed to sell the Subject to Erez's predecessor for its redevelopment as a single-use corporate office park.

Erez was qualified as an urban renewal entity under the LTTEL. It entered into an Acquisition Agreement to purchase the Subject for its redevelopment as a 60,000 square foot (SF) corporate headquarters for its affiliate LTC Consulting Services. Lakewood designated Erez as the Subject's redeveloper by resolution dated December 10, 2014 and required Erez to obtain title to the Subject. Per the Ordinance, the redevelopment project for the Subject received preliminary and final major site approval from Lakewood's Planning Board on January 20, 2015.

In October 2015, Lakewood approved Erez's request for an LPT exemption under the LTTEL. Lakewood and Erez then entered into a 30-year financial agreement, which among others, provided that only improvements on the Subject are exempt from LPT under the LTTEL, in consideration for which Erez would pay an annual service charge. "Improvements" included "[a]ny building, structure or fixture permanently affixed to the Land and constructed" by Erez. Erez had "all rights pursuant to the applicable State law" as to the Subject's value determination (land and improvements) by Lakewood, "including the right to challenge the annual assessments of the value of the Subject . . . through a tax appeal or other appropriate proceeding." Any disputes as to breach of the agreement or any terms/provisions therein, could be resolved by either party applying to either the Tax Court or any other State court in a way "as will tend to accomplish the purposes of the" LTTEL and the agreement. There was no provision addressing the NRDF.

Thereafter, Erez improved the Subject with a 60,000 SF office building. Impervious coverage included parking lots, internal roadways, landscaping, stormwater management facilities, and the like. The development of the Subject was done through a general contractor, Regency Development Properties, LLC (hereinafter "GC"), an unrelated entity.

3

On July 28, 2017, the GC submitted the NRDF Certification/Exemption Form (hereinafter "Form N-RDF") to Lakewood. It noted that it had received a construction/demolition permit on October 15, 2015. It answered "No" to the question whether the Subject was "previously developed with a building, structure, or other improvement." It left blank the portion titled "Exempt From or Not Subject to Fee [N.J.S.A. 40:55D-8.4] Check one if appropriate," although the form states (in bold and capital letters) that "if an exemption or reduced payment is claimed, developer must attach proof of such claim." Erez checked the box "Full Fee Due (2.5%)."

On July 31, 2017, Lakewood's then tax assessor filled in Section B of Form N-RDF to indicate the "project's assessed value of land & improvements" was $12,651,600. The assessed value was also the equalized value (the average ratio being apparently 100%). He calculated the NRDF at $316,290 (2.5% of $12,651,600, the equalized assessed value (EAV) of the Subject).

In March 2018, Erez deposited the NRDF with the Department of Community Affairs (DCA) under protest. In August 2018, Erez challenged the imposition of the NRDF to the Director.[1] Erez contended that since the improvements are exempt "under the [LTTEL] . . . and the . . . [a]greement," the NRDF should be calculated by "attributing" a zero-dollar value to the improvements.

Lakewood opposed Erez's challenge on grounds that both land and improvements carry value regardless of any LPT exemption, and in any event, an LPT exemption applies only to taxes not fees such as the NRDF. It attached a computation of the EAV excerpted from its MOD IV system.[2] One excerpt showed the value assessed for improvements at $10,515,600 and its

---

[1] The DCA returned the entire amount of the deposited fee to Erez in July 2019. Erez agreed with Lakewood to hold the funds pending outcome of this litigation.

[2] The MOD IV "is a statewide computer database used by assessors to keep every line item current as to value and other descriptive data." Property Administration - Local Property Division of Taxation, Handbook for New Jersey Assessors, ¶304 (rev'd 2021).

classification as 15F being under a 30-year financial agreement (also known as PILOT) beginning July 31, 2017, pursuant to N.J.S.A. 40A:20-1.[3]  The other showed the value assessed for land (5.348 acres purchased in June of 2015 for $535,000) as $2,136,000; the non-usable code as 33 ("sales of . . . currently exempt property," see N.J.A.C. 18:12.1.1(a)(33)); and its classification as 4A (taxable).[4]

The Director upheld the imposed NRDF by letter dated September 24, 2018.  He explained that the statutory exemptions from the NRDF did not include a property exempt under the LTTEL, and that an exemption under the LTTEL does not render the improvements' assessed value as zero nor obviate an assessor's duty to place a value on the property (land and improvements) for LPT purposes under LPT laws.

Erez asked the Director to reconsider his determination since it reflected "a fundamental misunderstanding of the basis of Erez's challenge to the NRDF."  Erez stated that it was only disputing the computational methodology, not that the Subject's "development is exempt from the NRDF."  In other words, Erez stated, the NRDF should be calculated on land value alone.

Lakewood opposed the reconsideration request for the same reasons it had in its original opposition.

On December 19, 2018, the Director denied reconsideration noting that computation of the NRDF is on the EAV of land plus the EAV of improvements. Under Erez's logic, the Director

---

[3] Class 15F means "Other Exempt" which includes "real property exempt from taxation but not described in any of the foregoing classes."  N.J.A.C. 18:12-2.2(q).  An assessor "must record and track" in the MOD IV "all exemptions and abatements to ensure that all taxable and exempt property is accounted for."  Handbook for New Jersey Assessors, ¶501.01.

[4] Class 4A is "Commercial Property" and includes "income-producing property" such as "shopping centers, malls, office buildings, restaurants, theaters, etc."  N.J.A.C. 18:12-2.2(e).

pointed out, no property exempt under the LTTEL would be subject to the NRDF, which would then render the statutory exemptions for the fee a nullity.

Erez timely challenged the Director's determination to this court. It only asked that the NRDF "must be recalculated by attributing a valuation of zero (0) to the applicable tax exempt improvements." In alleged that it "appeals the determination" of the Director, and demanded "judgment for the full amount of the [NRDF] plus interest" and any warranted equitable relief.

The Director then moved for summary judgement on grounds the NRDF imposed on the Subject properly included the value of the improvements. Erez cross-moved for summary judgment arguing the opposite. It also, for the first time, contended that there was no reduction for the value of the parking lot in computing the NRDF.[5] See N.J.S.A. 40:55D-8.4(b)(1) ("exempt from the imposition of" the NRDF are "parking lots and parking structures" built "in conjunction with a non-residential development, such as an office building"). Per Erez's GC, about 15% of the Subject is occupied by an office building, thus, 85% is comprised of site improvements (parking lot, curbs and aprons, driveway, and storm drainage). Construction costs included developing the site such as "grading, drainage, earthwork, tree clearing . . . storm drainage construction, engineering costs, survey expenses and the builder's management fee."[6] The GC tabulated the "expenses . . . directly related to construction of the parking" as follows:

| Driveway Paving (including base course, top course, and striping of $16,900) | $ 486,410.50 |
|---|---|
| Parking lot signage | $ 37,590.00 |

[5] In its protest and reconsideration request to the Director, Erez did not contest the EAV of the improvements, never raised the issue that such value improperly included the value of the parking lot in calculating the NRDF, and never contended that the NRDF should be computed on some amount other than $0 for the improvements.

[6] After the Director filed a reply to Erez's cross-motion, Lakewood was included as a defendant by a Consent Order. Erez filed an amended complaint identifying Lakewood as a defendant and adding only one additional allegation: that the DCA returned the deposited NRDF to Erez in July 2019 which it was holding pending litigation. It did not raise the parking lot issue. Lakewood filed an answer, and the Director filed an amended answer to the amended complaint.

| | |
|---|---|
| Curbs & Aprons | $  39,030.00 |
| Storm drainage | $ 310,127.17 |
| Site work (approximate 85% of $306,080.79) | $ 260,168.67 |
| Builder's management fee (10% of costs identified in this cert.) | $ 116,009.79 |
| Engineering (approximate 85%) | $   13,213.96 |
| Surveyor (60%) | $   13,557.60 |
| Total | $1,276,107.50 |

The total divided by the 268 parking spaces, provided a per-space cost of $4,761.60.

Erez retained a real estate appraiser (accepted by the court, without objection, as an expert in real estate appraisal) who testified that the above costs were the most credible indicator of value under the cost approach since they were actually incurred, they were local costs, and the Subject was newly developed. He also converted each item into a cost per SF (PSF) (based on aerial measurements of the parking lot at 120,795 SF), and cost per parking space. He noted that the costs were similar to those of an adjacent site also developed by the same contractor, thus, were reasonable and reliable, as opposed to cost data from Marshall & Swift (M&S) which is estimated on a national basis and does not account for the variations of site work "between property to property." To the above tabulated costs, he added 15% for entrepreneurial profit for a total cost of the parking lot as $1,467,000.[7] He also opined a separate value for the land underlying the parking area (2.77 acres) at $1,940,000 based on a comparable sales approach using six land sales in Lakewood. His total value for the parking lot was thus $3,407,000 as of December 3, 2021.

Neither defendant disputed that the value of the parking lot should be excluded from the NRDF. Per Lakewood's deputy tax assessor, the value under a cost approach is $2.99 PSF of asphalt paving using data from M&S. The total parking space area was 34,304 SF (268x128 SF,

---

[7] The parking lot also included canopies with solar power, but these were built after the Subject was developed by another GC. Erez did not contend that these costs are part of, and therefore, should be exempt from the NRDF.

the measurement of each space at 8x16 SF), thus he opined, the amount to be excluded from the NRDF should be $102,569. He conceded that each parking space measured 9x18 SF per the site plan. He maintained that since Lakewood only values parking spaces for purposes of imposing the LPT, only the value of such spaces should be excluded for NRDF purposes.

**ANALYSIS**

*A. Disposition Method for Issues Presented*

The Director and Erez moved for summary judgement on the issue of whether the NRDF must be calculated by allocating a zero-dollar value to the improvements on the Subject because they are tax exempt under the LTTEL.[8] Resolution of this issue involves only a legal analysis, therefore, a decision by summary judgment is appropriate. See R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

As noted above, Erez, for the first time, in its cross-motion for summary judgement, raised the issue that the NRDF calculation was also incorrect because the EAV for improvements did not exclude the value of the Subject's parking lot. Neither in its administrative protest, nor in its complaint did Erez allege that the EAV of the improvements improperly included the value of the parking lot. As such the court could remand the issue for the Director's examination, or deny Erez the ability to raise the issue during litigation. See generally Bauer v. Nesbitt, 198 N.J. 601, 610 (2009) (a "cause of action . . . must be discernable within the four corners of the complaint," and if it "completely omits the underlying basis for relief," then it "cannot be sustained as a matter of fundamental fairness. An opposing party must know what it is defending against; how else would

---

[8] In its brief in support of its cross-motion, Erez footnoted that the "Lakewood Redevelopers Consortium, a group of similarly situated redevelopers in Lakewood, join in [Erez's] challenge." Neither Erez nor the "Consortium" moved for the "Consortium" to formally participate in this litigation in compliance with the court rules. The court thus rejects the attempted joinder.

it conduct an investigation and discovery to meet the claim?"). Cf. Univ. Cottage Club of Princeton v. Borough of Princeton, 26 N.J. Tax 185, 191 (Tax 2011) (denying plaintiff's attempt to raise the issue of valuation since the complaint only pled the incorrectness of the LPT exemption denial and holding that "R. 8:3-8(a) cannot be read to permit an amendment to add a claim which is made beyond the limitation period provided by N.J.S.A. 54:3-21").

Neither course of action is warranted here. If an issue that was never pled is "tried by consent or without the objection of the parties," then the court can decide the same by treating it "in all respects as if [it] . . . had been raised in the pleadings." R. 4:9-2. The complaint can thereafter be amended by motion at any time "to cause them to conform to the evidence and to raise" the issue, however, "failure" to do so "shall not affect the result of the trial of these issues." Ibid. Even if the adversary opposes presentation of the evidence "on the ground that it is not within the issues made by the pleadings," the court can permit amendment of the pleadings and "shall do so freely when the presentation of the merits of the action will be thereby subserved and the objecting party fails to satisfy the court that the admission of such evidence would be prejudicial in maintaining the action or defense upon the merits." Ibid. The court can adjourn the trial so the objecting party can properly address the evidence. Ibid. The rules governing the Tax Court incorporate R. 4:9-2. See R. 8:3-8(a) ("Amendments to conform to the evidence may be permitted in accordance with Rule 4:9-2").

Here, neither defendant objected to Erez's ability to raise the parking lot issue. In reply to Erez's cross-motion, the Director only argued that his determination should be upheld as presumptively correct and reasonable because Erez did not prove with clear and convincing evidence "that the EAV used to calculate the NRDF included the value of the parking lot" or that Lakewood assessed a value on the lot. Further, during oral argument of the summary judgment

motions, neither defendant argued that Erez is foreclosed or barred from raising the parking lot issue. Rather, they agreed that the Subject was developed with a parking lot, and that parking lots are exempt from the NRDF. Neither defendant objected to proof being adduced in this connection, nor did either contend that doing so would be prejudicial to them.

The court also provided the parties time and the opportunity to attempt an amicable resolution of this issue. Erez and Lakewood were unable to reach a consensus (the Director advising the court that Lakewood took the lead on this issue, since the assessor computes the EAV). Lakewood conceded that the EAV for improvements included costs for the parking lot ($102,569) and if this inclusion is found to be incorrect, then the NRDF should be reduced but not to the extent claimed by Erez. Testimony was also adduced, with Erez and Lakewood proffering evidence through their respective direct and cross examination of the witnesses, and undisputed documents in support thereof.[9] Thus, both defendants had ample time and opportunity to rebut/prove the value of the concededly NRDF-exempt parking lot.

Under these circumstances, the court finds that the application of R. 8:3-8(a) and R. 4:9-2, is appropriate. Therefore, it will decide the issue as to the parking lot's value based on the evidence presented solely for purposes of determining the amount to be exempted from the NRDF.

### B. The Plain Language of the NRDF Statute Obviates the Need for in _pari materia_ Analysis

The Director's interpretation of a statute is entitled to deference. Koch v. Dir., Div. of Taxation, 157 N.J. 1, 8 (1999). However, the "deference is not total, as the courts remain the final authorities on issues of statutory construction." Ibid. (citation and internal quotation marks

---

[9] Lakewood advised the court that it would not present testimony of a real estate appraiser because the proper method of calculating EAV is by applying calculations in M&S manual, not value "calculations . . . from an appraisal of the property," but that it would not object to Erez presenting testimony of a real estate appraiser.

10

omitted).   Here, the court concludes that the Director properly construed the NRDF law when upholding Lakewood's assessor's inclusion of the EAV of improvements for purposes of computing the NRDF.

The NRDF is imposed "on all construction resulting" in the development of a new non-residential property on an unimproved lot at 2.5% of the EAV "of the land <u>and</u> improvements." N.J.S.A. 40:55D-8.4(a)(1) (emphasis added);[10] Legislative Fiscal Estimate, <u>Sen. Comm. Substitute for Sen. 1783</u>, 2 (June 20, 2008) (proposed NRDF law "requires development fees to be charged Statewide on non-residential construction or improvements").[11]   EAV is defined by N.J.S.A.

_____

[10] The NRDF is also imposed when additions are made to existing structures for non-residential use and is computed at 2.5% on the increase in the EAV of the "additions to existing structures." N.J.S.A. 40:55D-8.4(a)(2).

[11] <u>See also</u> General Instructions to Form N-RDF which state as follows:

> For Assessor: The Assessor shall determine if a claimed exemption is justified.  If the property is exempt, the Assessor shall check the "exempt" box at the bottom of Section B, sign and provide the original signed Form N-RDF to the Construction Official and a copy to the Developer.  If not exempt, the Assessor, based on review of plans and conceptuals submitted with Construction Permit Application, shall prepare an estimated assessment of the property.  The Assessor is responsible for completing the "Estimated" column of Section B (E1-E5) to determine the **estimated** . . . [NRDF] due (E6).  E1 should be the **estimated** assessed value of land and improvements of the final development . . . . E3 should be the estimated [EAV] of the land and improvements of the final development on the site (E1+E3). If the development is new construction on vacant land, the [NRDF] is assessed on the value of land and improvements of the final development and E4 and F4 should equal $0.
>
> If the development is situated on real property that was previously developed with a building, structure, or other improvement, the [NRDF] is assessed on the value of the new improvements only, without including the value of the land or the existing improvements, and E4 and F4 should show the existing [EAV] of the land and improvements as of the date listed in section A when the construction or demolition permit was first sought.
>
> The Assessor then provides a copy of the estimate to the Construction Official and the Developer, and retains the original . . . . Upon notification that the property is ready for a final assessment, the Assessor reviews the estimate, performs a final assessment and completes Section B, "Final" column (F1-F5) to determine final fee, F6.  F1 should be the actual assessed value of land and improvements, and E4 and F4 should show the existing [EAV] of the land and improvements at

40:55D-8.3 as "the assessed value of a property divided by the current average ratio of assessed to true value for the municipality in which the property is situated" pursuant to LPT laws, N.J.S.A. 54:1-35a to -35c. The assessor must initially estimate the EAV of the "non-residential development," thereafter confirm or modify the same pursuant to the LPT law, N.J.S.A. 54:1-35.35,[12] and then compute the NRDF. N.J.S.A. 40:55D-8.4(e).

The statute's plain language evidences that the NRDF is computed on the EAV of both land and improvements. Lakewood's then assessor did precisely what the NRDF statute plainly requires: he first determined the total EAV of the Subject at $12,651,600 (allocated $10,515,600 to improvements and $2,136,000 to land), and then multiplied the same by 2.5%. Therefore, there is no need to resort to other methods of interpretation of how the NRDF should be calculated. See State v. Butler, 89 N.J. 220, 226 (1982) ("If the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the [statute's] . . . literal terms to divine the Legislature's intent").

Erez concedes that the Subject's improvements are not exempt from the NRDF. However, it argues, the line on Form N-RDF as to the EAV for improvements must reflect $0 because the improvements are exempt from LPT under the LTTEL. The court rejects this argument. As noted above, the EAV is to be determined under LPT law. The LPT law has no provision requiring an assessor to allocate or attribute $0 of the EAV to the improvements for properties which are subject to the LTTEL. Nor is there any such mandate or suggestion in the LTTEL.

completion, F2 should be the Director's ratio *at the time of completion of the project*, and F3 should be the [EAV] of land and improvements at completion (F1+F2).

[12] This statute provides that the Director must "by rule establish standards to be used in the valuation and revaluation of real property to be used for assessment purposes."

Erez is misguided in contending that the classification of a property as 15F for purposes of the LPT list evidences that the property has "no taxable value." The classification simply identifies that the property is tax exempt in that there is no tax to be paid on the assessed value, not that the property's assessed value is $0. The statue in this regard makes this plain. See N.J.S.A. 54:4-27 (assessor should maintain a separate tax list of tax-exempt properties, and "shall value such land and buildings . . . at the amount which would be the taxable value if the same were not exempt from taxation in the same manner as other real . . . property, and in each case he shall state the ground of exemption"). So do the regulations. See N.J.A.C. 18:12-3.1(a) (assessors must enter the "value of [the] land and buildings" of tax-exempt properties on the exempt tax list); N.J.A.C. 18:12-3.1(b)(2)(viii; ix; x) (an assessor must "[i]nsert the true value of the land to which an exemption is granted" as well as "the true value of all buildings or improvements to which an exemption is granted" when preparing the exempt tax list). Assessors are thus instructed to determine the value of a tax-exempt property although the property will not generate tax revenues. See Handbook for New Jersey Assessors, ¶416.01 ("Although exempt property is taxed at zero dollars ($0), assessors must determine accurate taxable assessed values so that should exemption cease proper tax payments will be obtained. Also accurate valuing of exempt property ensures the correct basis for any 'in-lieu' of payments"); ¶503.16 (exemption under the LTTEL is shown on the tax list as "both a taxable and an exempt line item" and the "total assessed value exempted appears on the Exempt Property List with the same block and lot as the taxable portion with the addition of an X qualifier and exempt property class 15F").

While the phrase "taxable value" as used by Erez can imply $0 value, it is $0 in the sense that no tax is forthcoming from the tax-exempt property (or as the Director calls it, "billable value"), not that the property is assessed at a true value of $0. The NRDF requires the assessor to

determine the property's EAV (land and improvements), and Lakewood's then assessor properly did so. There is undoubtedly value in the improvements, and the tax exemption does not obliterate that value. See City of Hackensack v. Cnty. of Bergen, 30 N.J. Tax 240, 252 (Tax 2017) ("To say that a property has a value of zero defies logic. All real property has inherent value. A tax exemption does not strip a property of its value. Rather, it simply relieves a taxpayer from an obligation of paying the tax owed").

Had the NRDF law intended to exempt improvements from the fee for properties under an agreement pursuant to the LTTEL law, it would have done so. It did not. See N.J.S.A. 40:55D-8.4(b). Rather, the properties for which the NRDF need not be paid are those exempted from tax under the LPT statute. See N.J.S.A. 40:55D-8.4(b) (properties not subject to the fee are those used by religious entities and those used for educational purposes and exempt from LPT under N.J.S.A. 54:4-3.6). Here, there is no allegation that the Subject has received any LPT exemption under N.J.S.A. 54:4-3.6. Therefore, the NRDF applies to the EAV of the land and improvements on the Subject (except the parking lot). Cf. N.J.S.A 40:55D-8.6(a)(2) (nonresidential developers or redevelopers under an agreement prior to July 2008, the effective date of the NRDF law, need not pay the fee provided the agreement requires either to "pay a fee for affordable housing of at least one percent of the equalized assessed value of the improvements which are the subject of the development plan, developer's agreement, or redevelopment agreement") (emphasis added).

Erez argues that the LTTEL should be read in pari materia with the Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -22 (enacted in 1992), since the subject matter of both statutes is the same: redevelopment of certain neglected areas in a town for the betterment of all by incentivizing developers/redevelopers to construct residential and nonresidential buildings with tax exemptions/abatements. See also N.J.S.A. 40A:20-2 (the LTTEL's "provisions

14

are one means of accomplishing the redevelopment and rehabilitation purposes of the [LRHL] . . . through the use of private entities and financial arrangements pertaining thereto, and [the LTTEL] . . . should be construed in conjunction with" the LRHL).

There is no need for this pari materia analysis if the court finds, as it did here, that the NRDF statute's plain language controls. See Carlson v. City of Hackensack, 410 N.J. Super. 491, 497 (App. Div. 2009) (when the language of the statute at issue is "clear and unambiguous" the court "need not resort to" its pari materia reading with another statute). Even if the court were to consider the LRHL and the LTTEL as having the same goals of encouraging private entities to partner with the government for societal good, in return for tax exemptions, Erez's argument fails. There is nothing explicit or implicit in either law as to assigning a $0 value to the tax exempted improvement, or equating a tax exemption to a $0 EAV.

More to the point, the explicit legislative intent of the NRDF law is to legislatively require what the courts permitted - requiring developers to continue to fund affordable housing, but on a uniform state-wide rate. See N.J.S.A. 40:55D-8.2 (the NRDF law, N.J.S.A. 40:55D-8.1 to -8.7 "prohibits municipalities from imposing their own fees to fund affordable housing on non-residential development," thus obviating "over" reliance on municipal fees for this purpose, which if not imposed uniformly on a state-wide basis, can dissuade and "halt[] . . . non-residential and residential development," frustrating "the constitutional obligation to provide for a realistic opportunity for housing for families at all income levels"); Sen. Eco. Growth Comm., Statement to Sen. 1873 (May 19, 2008) (the 8%-10% fee currently being charged on nonresidential construction or improvement if allowed to continue would have a "devastating impact . . . on job creation in New Jersey," and the NRDF law would "substantially" reduce the fee to "2.5% of the equalized assessed value of land and proposed improvements" for new construction on vacant lots,

15

or "2.5% of the increase in equalized assessed value of the additions to existing structures to be used for non-residential purposes").

The legislative intent of the NRDF law renders irrelevant, if not questionable, any resort to reading in pari materia, the provisions of the LRHL and LTTEL. That the LRHL and the LTTEL may have the same goals of redevelopment does not require a conclusion that the tax exemption afforded to improvements be incorporated into the NRDF law. Indeed, doing so would subvert the goals of redevelopment - by depriving a source of funding for the same, i.e., the NRDF. See Statement to Sen. 1783 (May 8, 2008) (proposed NRDF law "requires development fees to be charged on nonresidential construction or improvements, by all municipalities, to fund affordable housing").

Erez contends that the NRDF statute should be read in pari materia with N.J.S.A. 46:15-7.2, which imposes a fee (also called "mansion tax") upon transfer of real property for a consideration over $1,000,000 but not for properties that are tax exempt. Therefore, it argues, properties such as the Subject should also not be required to pay the NRDF because "[t]here is nothing in the language or legislative history of the" NRDF statute "to suggest that the Legislature intended to take a different approach to exempt property than the approach used with the fee established by N.J.S.A. 46:15-7.2."

The court rejects this argument. For one, there is simply no parity between the two statutes. The mansion tax was imposed to raise revenue for "general state purposes." Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Taxation, 24 N.J. Tax 98, 99 (Tax 2008) (citing Assem. Budget Comm. Statement to Assem. 3115 (2004)), rev'd on other grounds, 414 N.J. Super. 453, 457 (App. Div. 2010). As noted above, the NRDF was to streamline imposition of development fees at a State-wide level to fund affordable housing at a fixed amount than currently charged by municipalities.

16

Second, the mansion tax is imposed based on the status of the grantee for income tax purposes, i.e., no tax if the grantee is exempt from federal income tax under I.R.C. §501(c)(3). N.J.S.A. 46:15-7.2(b)(1). Clearly, the NRDF is not based on the tax-exempt status of the grantee for income tax purposes. In fact, N.J.S.A. 46:15-7.2(b)(2) contradicts Erez's argument since that provision references EAV in the context of the fee: transfers of real property "incidental to a corporate merger or acquisition" are exempt provided "the equalized assessed value of the real property transferred is less than 20%" of the value of all assets transferred.

In sum, the court finds that Lakewood did not err in including the value allocated to improvements for purposes of calculating the NRDF.

*C. The Amount to be Excluded for the Parking Lot in Computing NRDF Cannot be Determined*

N.J.S.A. 40:55D-8.4(b)(1) "exempt[s] from the imposition of" the NRDF, "parking lots and parking structures" whether or not built "in conjunction with a non-residential development, such as an office building, or whether the parking lot is developed as an independent non-residential development." There are no regulations or other guidance on the methodology for determining the exempted amount of a parking lot or parking structures although the Legislature delegated the regulatory authority to Treasury. See N.J.S.A. 40:55D-8.4 (e) ("The Treasurer shall adopt such regulations as necessary to effectuate" the NRDF laws).[13]

The NRDF law imposes a fee on the EAV of land and improvements if the new construction is on vacant land, but only on improvements if the new construction is on improved property. See N.J.S.A. 40:55D-8.4(a)(2) (fee is on the "the increase in equalized assessed value, of the additions to existing structures"); General Instructions to Form N-RDF, n.11. The Subject

---

[13] Cf. N.J.A.C. 18:15-4.5(b) (a regulation promulgated by the Director providing detailed guidance on using a cost approach to value taxable structures for purposes of farmland assessment).

was vacant when it was slated for redevelopment and was vacant when Erez redeveloped it. As noted above, the assessed value of real property is computed under LPT laws. Therefore, here, the exemption amount for purposes of the NRDF would (and should) be the value of the parking lot, i.e., value of land plus improvements as determined for purposes of the LPT laws.

It follows that the methodology for determining the value of a property for purposes of computing the exemption amount from the NRDF should not be different than that employed for a non-fee purpose. See e.g., N.J.S.A. 40:55D-8.6(e) (the NRDF law "shall not be construed in any manner as affecting the method or timing of assessing real property for property taxation purposes," however, the payment of the fee "shall not increase the equalized assessed value of any property"). Thus, the valuation methodologies commonly used for LPT purposes (cost, income, sales comparison) apply for determining the value of the real property subject to the NRDF (land and improvements or only improvements). However, because the NRDF statute mandates when the EAV should be determined (an estimate within 90 days of the "issuance of the first building permit for a development" and a final one pursuant to LPT law within "10 business days of a request for the scheduling of a final inspection," see N.J.S.A. 40:55D-8.4(e)), the normal October 1, pre-tax year date for LPT assessments, see N.J.S.A. 54:4-23, does not control. For instance, here pursuant to N.J.S.A. 40:55D-8.4(e), the Subject's final assessed value is to be, and properly was determined as of July 31, 2017.

Logically then, it follows that the standard of review for determining the reasonableness of value of a structure deemed exempt from the NRDF should be no different than the standard of review attendant of any value determination by an assessor when imposing a LPT assessment on real property. That standard is that LPT assessments are presumptively correct and the party challenging the same has the burden to (a) overcome the presumptive correctness; and (b) persuade

18

the court what the property's fair market value should be. See TD Bank v. City of Hackensack, 28 N.J. Tax 363, 374-377 (Tax 2015) (setting forth the presumption of correctness attached to an assessor's determination for LPT purposes, and the challenger's burden in this regard). It should be noted here that in adopting this standard, the court is not judging the correctness of the EAV of the Subject as determined by the assessor. Rather, the court is only examining whether the value assigned by the assessor to a component of the Subject (parking lot) for purposes of correctly computing the NRDF is reasonable. Since that value assignment is a part of an assessor's responsibility just as is determining the Subject's EAV, the same presumptive correctness standard applies, since both exercises are undertaken by the assessor as a governmental agent.

Here, then, the value attributed by Lakewood to the Subject's parking lot, i.e., $102,569, is presumptively correct. Erez has the burden of overcoming the same, and the burden of persuading this court, with competent, credible evidence, that preponderantly demonstrates that the value should be increased solely for purposes of deciding the amount to be excluded from the EAV for purposes of the NRDF.

Both Erez and Lakewood's deputy tax assessor used the cost approach as a valuation method. This method has "has two elements - land value and the reproduction or replacement cost of the buildings and other improvements." Int'l Flavors & Fragrances, Inc. v. Borough of Union Beach, 21 N.J. Tax 403, 417 (Tax 2004). The court agrees that this is the appropriate method as the Subject was newly constructed, and new construction obviates the difficulty in determining the appropriate depreciation. See Appraisal Institute, The Appraisal of Real Estate, 566 (14th ed. 2013) (since "cost and market value are more closely related when properties are new, the cost approach is more important in estimating the value of new or relatively new construction").

19

Erez has overcome the presumptive correctness of the value attributed to the parking lot by Lakewood. One is because the court is unpersuaded by the deputy tax assessor's contention that the value of a parking lot is only for the area covered by parking spaces because only those spaces are assessed and taxed. It is unclear why improvements such as storm drains, curbs, and aprons do not add to value. Second is because he did not attribute value to land. The Subject was unimproved prior to its development, therefore, value for the NRDF purposes should be for both land and improvements.

However, Erez has failed to persuade the court that the amount exempted from the NRDF should be $3,407,000. First, the valuation date of December 2, 2021 (the date Erez's appraiser inspected the Subject) is problematic. The Subject was completed in 2017. Therefore, credible comparable sales would be those in 2017, and if there was a paucity of sales in that period, then possibly post-2017 sales. There was no explanation that sales in Lakewood or competitive taxing districts during 2017 were scarce.

Second, assuming such paucity, and therefore, accepting as evidence, post-2017 sales, market adjustments, if necessary, would be required going back to 2017 when the Subject was completed and assessed for NRDF purposes. Because a December 2021 valuation (appraisal) date was used, this did not occur. While the appraiser opined that Lakewood is one of the most robust markets in Ocean County with land prices on a continual increase (and corresponding decrease in land supply), thus meriting a +5% adjustment per year, there is no information to show that the robust market existed in 2017 or from 2017 onwards to warrant a 5% adjustment for sales occurring in 2019. Again, even if the 5% is reasonable (there was no objective data to support this amount), it would have to be adjusted negatively for a 2017 valuation date. Thus, even if the court were to

consider the vacant land comparables, it could not arrive at a meaningful value conclusion since it cannot speculate adjustments for market conditions.[14]

If the court cannot conclude a value for the land based on the evidence before it, there is no need to continue to evaluate the evidence for the value of the site improvements, the second element of the cost approach. See Union Drydock & Repair v. City of Hoboken, 19 N.J. Tax 207, 212 (Tax 2000) (when the court cannot "reasonably estimate the value of the subject land, review of [the appraiser's] cost analysis for the subject improvements . . . [was] unnecessary").[15]

**CONCLUSION**

For the aforementioned reasons, the court affirms the Director's final determination that Lakewood correctly computed the NRDF on the Subject.[16]

---

[14] Note that, if evaluated, the court would reject Sales 1, 2 and 6 since they were in zones different from the Subject (Sale 2 with 1.03 acres would not qualify to be in the Subject's zone DA-1 which requires minimum 3 acres). This raises the issue whether their highest and best use (HBU) is similar to the Subject, which Erez's appraiser concluded is, as vacant, for "office development." See The Appraisal of Real Estate, 366, 376 ("Zoning is a basic criterion in selecting comparables. Sites zoned the same as the subject property generally have the same or similar" HBU, thus, would be "the most appropriate comparables"). Comparable 6, a contract for sale, was for development of the site with multi-family units. Sale 4 was allegedly approved to be developed for retail use with two pad sites which does not appear to be a permissible use in the Subject's DA-1 zone.

[15] The court notes that due to the GC's subjective guesstimate that 85% of the development costs are attributable to the parking lot, the M&S data would be more reliable in determining the value of the site improvements.

[16] The Director should not be a defendant in a NRDF litigation simply because a challenge to the imposed NRDF is to the Director and "appeals" from his determination are to the Tax Court under the State Uniform Tax Procedure Law (SUTPL). See N.J.S.A. 40:55D-8.6(b). His role as a defendant in routine State tax matters, where appeals from his final determination are also to the Tax Court under the SUTPL, however, is proper, because it is the Director who audits, assesses, imposes, and collects a state tax. This is not so for NRDF matters because he does not (1) determine the EAV; (2) compute the NRDF; and (3) impose the NRDF. See also Nat'l Winter Activity Ctr. v. Dir., Div. of Taxation, 32 N.J. Tax 12, 20, n.3 (Tax 2020) (the Director acts in a "quasi-judicial capacity" in an NRDF matter, similar to a county board of taxation, therefore, only the municipality should be the defendant).